IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

MARCIE NORMANDIN, *Plaintiff/Appellant*,

*v.*

ENCANTO ADVENTURES LLC, et al., *Defendants/Appellees*.

No. 1 CA-CV 17-0373
FILED 6-26-2018

---

Appeal from the Superior Court in Maricopa County
No. CV2015-013292
The Honorable Lori Horn Bustamante, Judge

**AFFIRMED**

---

COUNSEL

The McClellan Law Firm, P.L.C., Phoenix
By Matthew L. McClellan

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney (argued)
*Co-Counsel for Plaintiff/Appellant*

Moyes Sellers & Hendricks, Phoenix
By Joseph L. Brownlee (argued), Joshua T. Greer
*Counsel for Defendants/Appellees*

---

**OPINION**

---

Judge Paul J. McMurdie delivered the opinion of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

**¶1**         Marcie Normandin appeals from the superior court's grant of summary judgment in favor of Encanto Adventures, LLC, d/b/a Enchanted Island Amusement Park ("Encanto") and the City of Phoenix ("City"), which resolved Normandin's premises-liability negligence claim. We affirm the superior court's ruling and hold that: (1) Encanto was a "manager" within the meaning of Arizona Revised Statutes ("A.R.S.") section 33-1551 because Encanto administered and directed the maintenance of the area in question pursuant to an agreement with the City; (2) Normandin was a recreational user under § 33-1551(C)(5) because no part of the fee she paid to Encanto was paid to enter the area of the park where the injury occurred; and (3) the statute is constitutional as applied to Encanto.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**         In 1991, the City and Encanto's predecessor executed an agreement to establish a children's amusement park within Encanto Park ("Park") in "an area . . . known as Picnic Island" ("Concession Premises"). In the agreement, the City licensed certain exclusive rights to construct, maintain, and operate children's rides in a fenced-in area of the Concession Premises ("Enchanted Island"), which also allowed Encanto's predecessor to use the remainder of the Concession Premises ("Agreement"). Encanto's owner, Kraig Lyon, testified that for 25 years he personally maintained the Concession Premises, including an area neighboring Enchanted Island where piñata games were often played ("piñata area"). Normandin acknowledges that Encanto regularly patrolled, maintained, inspected, prepared, and groomed the piñata area.

**¶3**         Normandin paid $287 to Encanto for her one-year-old daughter's birthday party ("Pete's Package") to be held at the Enchanted Island. Pete's Package included "thirty all day ride wristbands . . . , ten tables . . . [,] a private shaded area (by trees only) for 4 hours, [a special

appearance by] Pete the Parrot, [and a] T-Shirt for the Birthday Boy/Girl." Pete's Package explicitly excluded a piñata, and provided no part of Normandin's payment for the package would have been refunded had Normandin decided not to bring her own piñata or declined to participate in a piñata activity.

¶4         Encanto allows its customers to bring a piñata and play the game during their birthday celebrations. However, Encanto requires that any piñata be broken outside of the fenced-in area of Enchanted Island. Encanto recommends customers use the piñata area near the birthday party venue, but outside of Enchanted Island. Normandin fell in the piñata area while assisting her daughter in breaking a piñata. Normandin broke her right ankle and injured her right arm. She alleged she fell because she stepped into a sprinkler-head divot or depression covered by grass in the piñata area.

¶5         In her complaint, Normandin pled a single count of premises liability, a simple negligence claim, against the City and Encanto. Encanto and the City moved for summary judgment based on the immunity provided by A.R.S. § 33-1551(A). The motion was granted, and Normandin timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶6         Normandin argues the superior court erred by granting summary judgment because: (1) Encanto was not an entity protected by § 33-1551(A), whether as an "owner, . . . lessee, . . . manager or occupant" of the premises; (2) Normandin either paid more than a nominal fee to Encanto, which excluded her from being a recreational user of the Park under § 33-1551, or the nominality of the fee paid is a question of fact to be resolved by a jury; (3) for private persons and private corporations, § 33-1551 violates the Anti-Abrogation Clause, Article 18, Section 6, of the Arizona Constitution; (4) the statute violates the Equal Privileges-and-Immunities Clause, Article 2, Section 13, of the Arizona Constitution; and (5) the statute is an unconstitutional special law.

¶7         Summary judgment is proper if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *MacKinney v. City of Tucson*, 231 Ariz. 584, 586, ¶ 6 (App. 2013). On appeal from the grant of summary judgment, we view all facts and reasonable inferences in the light most favorable to Normandin, *see Andresano v. County of Pima*, 213 Ariz. 65, 66, ¶ 2 (App.

2006), and review the superior court's decision *de novo*, *MacKinney*, 231 Ariz. at 586, ¶ 6. Whether § 33-1551 applies and whether it is constitutional are questions of law, subject to *de novo* review. *Andresano*, 213 Ariz. at 67, ¶ 6; *see also Prince v. City of Apache Junction,* 185 Ariz. 43, 45 (App. 1996) (issues of statutory interpretation are reviewed *de novo*), *superseded by statute on other grounds as recognized in MacKinney*, 231 Ariz. at 590, ¶ 18, n.5.

**¶8**         Because we "decide cases on nonconstitutional grounds if possible," *Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, 328, ¶ 10 (App. 1998), we will first address Normandin's statutory arguments, *see Herman v. City of Tucson*, 197 Ariz. 430, 432, ¶ 7 (App. 1999). "Our primary goal in interpreting a statute is to give effect to the legislature's intent, and the language of a statute is the most reliable evidence of that intent." *MacKinney*, 231 Ariz. at 587, ¶ 7.

## I.      Section 33-1551's Immunity Against Claims for Simple Negligence Applies to Both the City and Encanto.

**¶9**         "[I]n 1965, the Committee of Officials on Suggested State Legislation set forth a Model Act to encourage private landowners to open their land to the public for recreational purposes." Michael S. Carroll, Dan Connaughton & J.O. Spengler, *Recreational User Statutes and Landowner Immunity: A Comparison of State Legislation*, 17 J. of Legal Aspects of Sport 163, 164 (2007) (citing Council of State Governments, 1965). "Currently, all 50 states have recreational user statutes that limit the liability of landowners who open their lands to allow public recreational use for injuries sustained by persons using their land . . . ." *Id.* at 169. Arizona adopted its version of the model act in 1983. *See* 1983 Ariz. Sess. Laws, ch. 82, § 1. The current version of the statute reads:

> A public or private owner, easement holder, lessee, tenant, manager or occupant of premises is not liable to a recreational . . . user except on a showing that the owner, easement holder, lessee, tenant, manager or occupant was guilty of wilful, malicious or grossly negligent conduct that was a direct cause of the injury to the recreational . . . user.

A.R.S. § 33-1551(A).

**¶10**         Neither party disputes that Normandin's injury occurred inside the Park. Likewise, the parties recognize that the Park qualifies as a premises covered by § 33-1551(C)(3)–(4) ("'Premises' means . . . park . . . and any other similar lands, wherever located, that are available to a recreational . . . user . . . ."); *see also MacKinney*, 231 Ariz. at 589, ¶ 13 (a park

"is a parcel of property kept for recreational use that is designed and maintained for the primary purpose of allowing users to engage in an undisputedly recreational activity"). Neither party disputes that the City owns the Park or that the statute provides immunity to the City if Normandin was a recreational user. Finally, neither party disputes Normandin was engaged in a recreational activity (hanging and breaking the piñata) when the injury occurred. *See* A.R.S. § 33-1551(A), (C)(5) (protected activity includes exercising or "other outdoor recreational pursuits"). Therefore, we must resolve whether Encanto's activities were covered under § 33-1551; and, if so, whether Normandin was a recreational user under the statute.

### A. Encanto Is Immune under Section 33-1551(A) as a "Manager" of the Piñata Area.

¶11　　According to Normandin, Encanto does not qualify as an entity protected by the statute. Encanto claims that it was a "manager" of the Concession Premises under the statute because the Agreement required it to maintain not only the Enchanted Island, but also the picnic and piñata areas. Normandin argues that Encanto waived its right to claim manager status; and no evidence in the record demonstrates the City hired, retained, or appointed Encanto to manage the piñata area, and, therefore, Encanto's work was, thus, "voluntary, self-interested acts of preparing the piñata premises for the benefit of its paying customers."

¶12　　Although Encanto did not specifically argue manager status below, the superior court considered the issue of whether Encanto was an entity protected under § 33-1551 when ruling on the motion, and expressly found Encanto fell within the statute's immunity. Contrary to Normandin's argument, the issue has not been waived. Moreover, we have discretion to consider even a waived issue if it is an issue of law, such as an interpretation of a statute, *see Searchtoppers.com, L.L.C. v. TrustCash LLC*, 231 Ariz. 236, 238, ¶ 8 (App. 2012), and its consideration "would dispose of an action on appeal and correctly explain the law," *Evenstad v. State*, 178 Ariz. 578, 582 (App. 1993) ("[W]hen we are considering the interpretation and application of statutes, we do not believe we can be limited to the arguments made by the parties if that would cause us to reach an incorrect result."). Both parties have extensively briefed the issue on appeal, and the record is sufficient to resolve the claim.

¶13　　The term "manager" is not defined in § 33-1551. When a phrase or words are not statutorily defined, we construe the words "according to their plain and ordinary meaning." *Beatie v. Beatie*, 235 Ariz.

427, 431, ¶ 19 (App. 2014); *see also* A.R.S. § 1-213 ("Words and phrases shall be construed according to the common and approved use of the language."). A manager is "[s]omeone who *administers* or supervises *the affairs of* a business, office, or other organization." *Manager*, Black's Law Dictionary (10th ed. 2009) (emphasis added). Other dictionaries define a manager as "a person who conducts business . . . affairs," Merriam-Webster's Collegiate Dictionary 754 (11th ed. 2012), and as "[a]n individual who is *in charge of a certain group of tasks*, or a certain subset of a company," *Manager*, BUSINESSDICTIONARY.COM, http://www.businessdictionary.com/definition/manager.html (last visited June 15, 2018) (emphasis added). *See also Midwestern, Inc. v. N. Ky. Cmty. Ct.*, 736 S.W.2d 348, 350 (Ky. Ct. App. 1987) (company paid to manage and oversee the day-to-day operation of a facility is a manager under recreational use statute); *Fagerhus v. Host Marriott Corp.*, 795 A.2d 221, 232 (Md. Ct. Spec. App. 2002) (a property manager with a contractual duty to manage and maintain premises a landowner makes available for recreational use is an "owner" entitled to invoke the protections of recreational use statute); *Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667, 676 (Pa. 2005) (easement holder entitled to protection under recreational use statute as it regularly maintained the property).

**¶14** Here, the Agreement imposed a duty on Encanto to "maintain the Concession Premises in good order and repair at its own expense during the entire term of [the] Agreement . . . [and] keep the Concession Premises in a clean and sanitary condition at all times." By stating "Concessionaire shall maintain the Concession Premises," the Agreement expressly required Encanto to maintain the piñata area.[1] Encanto maintained the piñata area daily by mowing the grass, reviewing the sprinkler heads, and patrolling for potential hazards. Normandin concedes Encanto regularly

---

[1]    The parties argue different interpretations of the contractual term "Concession Premises," specifically whether it includes the piñata area. To the extent there may have been an ambiguity when the Agreement was executed, the conduct of the City and Encanto over 25 years resolved any such ambiguity in favor of its inclusion. *See Carroll v. Lee*, 148 Ariz. 10, 13 (1986) ("[P]arties may by their course of conduct express their agreement, though no words are ever spoken. . . . An implied contract is one . . . inferred by the law as a matter of reason and justice from the acts and conduct of the parties and circumstances surrounding their transaction.") (citing Restatement (Second) of Contracts § 4; citing *Alexander v. O'Neil*, 77 Ariz. 91, 98 (1954)). The Concession Premises included the piñata area.

patrolled, maintained, inspected, prepared, and groomed the piñata area. The Agreement assigned Encanto control over the piñata area and directed it to perform that duty. Encanto, therefore, "was in charge of [the] group of tasks" required to maintain the piñata area. *See Manager,* BUSINESSDICTIONARY.COM. Encanto, thus, "administer[ed] the affairs of [its] business" as prescribed by the Agreement. *See Manager,* Black's Law Dictionary. Encanto was a "manager" within the meaning of § 33-1551.

¶15 Moreover, the legislature added the terms "manager" and "tenant" to § 33-1551 in 2011 to enlarge the group of protected entities. 2011 Ariz. Sess. Laws, ch. 123, § 1 (1st Reg. Sess.). Neither term's ordinary meaning was restricted by a legislative definition. Even when strictly construing § 33-1551, *see MacKinney*, 231 Ariz. at 587, ¶ 7, we must consider the purpose behind this statute—"to encourage landowners to open their lands to the public for recreational use . . . by 'limiting their liability toward persons entering thereon for such purposes.'" *Dickey ex rel. Dickey v. City of Flagstaff*, 205 Ariz. 1, 2, ¶ 7 (2003) (quoting *Suggested State Legislation on Public Recreation on Private Lands,* 24 Council of St. Governments 150 (1965)). Encanto was diligently managing the Concession Premises for years, including the piñata area, and the legislation provides immunity for such managers.

¶16 Because the statute only requires Encanto to qualify under one category of a protected entity, and because we review the statute's applicability *de novo*, concluding Encanto was a "manager" within the meaning of the statute, we decline to reach Normandin's arguments that Encanto was neither an owner nor occupier of the property. *See State v. Hardwick*, 183 Ariz. 649, 657 (App. 1995) (once the court finds grounds for resolution it need not reach other issues).

### B. Normandin Was a "Recreational User" within the Meaning of Section 33-1551.

¶17 Normandin argues she was a "commercial customer" and her payment of $287 for Pete's Package excluded her from being a "recreational user" under § 33-1551 because "[b]y paying that $287 fee, [Normandin] gained express or implied permission to enter the premises for the recreational pursuit of having a professionally hosted birthday party, including a piñata event . . . [,]" as the piñata area is within the premises licensed to Encanto by the Agreement. Encanto and the City counter that no part of the $287 paid for Pete's Package was an admission fee to enter the Park generally, or the piñata area specifically.

**¶18**　　　　To preclude immunity under the statute, Normandin would have had to pay more than a "nominal fee" to "enter or travel across the premises" to become more than a recreational user. *See* § 33-1551(C)(5) ("'Recreational user' means a person to whom permission has been granted or implied *without the payment* of an admission fee or any other consideration *to travel across or to enter premises to* . . . engage in . . . outdoor recreational pursuits. . . . *A nominal fee* that is charged . . . to offset the cost of providing the . . . recreational premises . . . does not constitute an admission fee . . . .") (emphasis added). In *Prince*, we held an admission fee "need not be paid *solely* 'to travel across or to enter upon premises.'" 185 Ariz. at 45 (quoting A.R.S. § 33-1551(B)(3)) (emphasis in original).[2] In other words, "if an admission fee or other consideration was paid, *at least in part*, to enter upon premises to engage in any of the defined recreational activities, that is *sufficient* to exclude one from recreational user status," *id.* (emphasis added), *unless* such a partial payment would be collected as a nominal fee to offset the cost of providing the recreational premises, *see MacKinney*, 231 Ariz. at 590, ¶ 18; *see also* A.R.S. § 33-1551(C)(5).

**¶19**　　　　Normandin, however, paid *no* part of the $287 fee to enter the Park, *see* § 33-1551(C)(5), to conduct her piñata activity despite her argument to the contrary.[3] Normandin testified she recognized she could have used the piñata area without paying an admission fee to the City or Encanto. Moreover, the amount she paid for Pete's Package would have been the same regardless of whether Normandin chose to break her piñata during the four hours she reserved for the birthday party, or at some other time. Normandin testified at her deposition she understood the cost of Pete's Package did not include a piñata, and that she would not receive any discount or refund had she decided to forego the piñata activity during the time she reserved with Encanto. Normandin further testified she brought her own piñata and piñata club, which Encanto required if her birthday celebration were to include breaking a piñata.

---

[2]　　　The "nominal fee" provision was added to § 33-1551 in 1998 in response to this court's 1996 opinion in *Prince*. *Allen v. Town of Prescott Valley*, 786 Ariz. Adv. Rep. 10, ¶¶ 9–10 (App. Mar. 13, 2018); *see also* 1998 Ariz. Sess. Laws, ch. 22, § 1 (2d Reg. Sess.).

[3]　　　Because we conclude Normandin paid no fee to Encanto to engage in the piñata activity, we need not reach Normandin's argument associated with Encanto's payment of a "concession fee" to the City for operating the Enchanted Island. *See* A.R.S. § 33-1551(C)(5).

¶20        We conclude Normandin was a recreational user within the meaning of § 33-1551 because she paid no part of the $287 for Pete's Package to enter the piñata area, *see* § 33-1551(C)(5), to conduct her piñata activity, *see Prince*, 185 Ariz. at 45. Under the facts of this case, the City and Encanto are immune under § 33-1551 from Normandin's claim of simple negligence and the superior court's grant of summary judgment was proper if the statute, as applied, withstands the constitutional challenges raised by Normandin.

**II.      Constitutionality of the Arizona Recreational Use Statute.**

       **A.      As Applied to Encanto, Section 33-1551 Does Not Violate the Anti-Abrogation Clause of the Arizona Constitution.**

¶21        Normandin argues § 33-1551 is unconstitutional if applied to Encanto because it would violate Article 18, Section 6, of the Arizona Constitution, depriving her of the right to bring a lawsuit for simple negligence against a private party.[4]

¶22        In determining a statute's constitutionality, we resolve any doubts in favor of its constitutionality and "will not interpret a law to deny, preempt, or abrogate common-law damage actions unless the statute's text or history shows an explicit legislative intent to reach so severe a result." *Ramirez*, 193 Ariz. at 330–31, ¶ 20 (quoting *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 273 (1994)). "[T]he party asserting that a statute is unconstitutional has the burden of clearly demonstrating that it is." *Id.* at 330 (citing *Hall v. A.N.R. Freight System, Inc.*, 149 Ariz. 130 (1986)).

¶23        In Arizona, "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Ariz. Const. art. 18, § 6. The anti-abrogation provision is an "'open court' guarantee intended to constitutionalize the right to obtain access to the courts . . . prevent[ing] [legislative] abrogation of all common law actions for negligence . . . and other actions in tort which . . . either existed at common law or evolved from rights recognized at common law." *Cronin v. Sheldon*, 195 Ariz. 531, 538–39, ¶¶ 35, 39 (1999) (citations omitted); *Dickey*, 205 Ariz. at 3, ¶ 9 (to be protected by the anti-abrogation provision of the Arizona Constitution, "[a] right of action for simple negligence . . . must have existed at common law

---

4       Normandin does not argue the statute violates the Anti-Abrogation Clause as applied to the City.

or have found its basis in the common law at the time the constitution was adopted").

¶24        Our supreme court held in *Dickey* that "a right of action for simple negligence, against a municipality engaged in a governmental function," did not exist at common law. *See* 205 Ariz. at 3, ¶ 9. To support its holding, the *Dickey* court explained that "[i]n 1913, a year after Arizona's statehood and three years after the Arizona Constitution was drafted, a treatise on municipal law reported that cities engaged in governmental functions were not subject to liability for negligence[.]" *Id.* at ¶ 10. Specifically, the *Dickey* court held that a city's "operation and maintenance" of a public park "open to the public for recreational use[,]" without a charge of an admission fee, was governmental in nature. *Id.* at 6, ¶¶ 22–23. The 1913 treatise on municipal law extended the municipal immunity in performing "strictly governmental functions" for the public benefit also to its "officers and *agents* thereunder." *Id.* at 3, ¶ 10 (emphasis added) (quoting 6 Eugene McQuillin, MUNICIPAL CORPORATIONS § 2623 (1913)).

¶25        Whether an agency relationship existed between Encanto and the City to maintain the piñata area, a governmental function performed for public benefit, "is a question of law for the court when the material facts from which it is to be inferred are not in dispute." *See Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 595, 597, ¶¶ 21, 28 (App. 2007) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.") (quoting Restatement (Third) of Agency § 1.01 (2006)).

¶26        Here, under the Agreement, the City assigned a duty to Encanto to maintain the Concession Premises, including the piñata area. *See Ruesga*, 215 Ariz. at 597, ¶ 29 ("Actual authority may be proved by direct evidence of express contract of agency between the principal and agent or by proof of facts implying such contract or the ratification thereof.") (quotation omitted). As noted above, Encanto or its predecessor maintained the Concession Premises according to the Agreement for 25 years. *See Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 511, ¶ 26 (App. 2011), *as amended* (Jan. 6, 2012) ("Actual authority includes both express authority outlined in specific language, and implied authority when the agent acts consistently with the agent's reasonable interpretation of the principal's manifestation in light of the principal's objective and other facts known to the agent.") (quotation omitted). Not only did the City expressly authorize

Encanto to maintain the Concession Premises, but it also ratified Encanto's performance.

¶27 Encanto acted as the City's agent by performing a governmental function for the public's benefit on behalf of the City. Therefore, no right of action for simple negligence against Encanto existed at common law. *See Dickey*, 205 Ariz. at 3, ¶¶ 9–10. Normandin's cause of action for simple negligence is not protected by Article 18, Section 6, as the Anti-Abrogation Clause is not implicated.

### B. As Applied to Encanto, Section 33-1551 Does Not Violate the Equal Privileges-and-Immunities Clause of the Arizona Constitution.

¶28 Normandin argues § 33-1551 is unconstitutional because it does not afford equal opportunity of access to the courts to "recreational users," a class of people who now cannot pursue their "fundamental constitutional right" to bring a claim for simple negligence. Normandin also posits that by extending immunity to a select group of non-municipal entities, such as Encanto, the statute failed to equally protect "all other citizens or corporations," in violation of Article 2, Section 13, of the Arizona Constitution.[5]

¶29 The Equal Privileges Clause requires that "[n]o law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." Ariz. Const. art. 2, § 13. The purpose of this clause "is to secure equality of opportunity and right to all persons similarly situated." *Prescott Courier, Inc. v. Moore*, 35 Ariz. 26, 33 (1929).

### 1. The Class of Recreational Users Is Rationally Related to a Legitimate Governmental Interest.

¶30 Although "the right to bring and pursue [an] action is a 'fundamental right' guaranteed by Article 18, § 6 of the constitution and the [Equal Protection Clause]," *Ramirez*, 193 Ariz. at 335, ¶ 33 (alteration in original) (quoting *Kenyon v. Hammer*, 142 Ariz. 69, 83 (1984)), Normandin has no right guaranteed by the constitution to bring an action for simple negligence against an agent performing a governmental function for a

---

[5] Normandin does not claim the statute violates the Equal Privileges Clause as applied to the City.

municipality. We, thus, conclude § 33-1551 does not interfere with Normandin's fundamental rights, or create a suspect class, *see infra* ¶¶ 30–31, such as to require a strict scrutiny assessment of the statute's constitutionality, *see Ramirez*, 193 Ariz. at 335, ¶¶ 33–34.

¶31 The Equal Protection Clause requires that "individuals *within* a certain class be treated equally and that there exist reasonable grounds for the classification." *State v. Russo*, 219 Ariz. 223, 226, ¶ 7 (App. 2008) (emphasis added) (quoting *State v. Navarro*, 201 Ariz. 292, 298, ¶ 25 (App. 2001)). Normandin's argument she was denied equal access to the courts is unavailing as she does not contend her treatment is different from any other recreational user, but only that the class of "recreational users" is an "invidious" class. The legislature, however, may classify persons or property, as long as the classification is "predicated on some reasonable basis, which will promote a legitimate purpose of legislation." *Moore*, 35 Ariz. at 33; *Eastin v. Broomfield*, 116 Ariz. 576, 584 (1977) ("Laws operating uniformly upon all of a class, when the classification has a basis founded in reason, are not obnoxious to any constitutional provision with which we are familiar. . . . The legislative judgment in all such matters, unless palpably arbitrary, is controlling upon the courts.") (quoting *Hazas v. State*, 25 Ariz. 453, 458 (1923)).

¶32 Here, § 33-1551 creates a classification rationally related to a legitimate governmental interest. *See Russo*, 219 Ariz. at 225–26, ¶ 6 (citation omitted). The State has a legitimate interest in "encourag[ing] the use of private land for recreational use." *Newman v. Sun Valley Crushing Co.*, 173 Ariz. 456, 459 (App. 1992). To accomplish the opening of private lands for recreational use, the statute "limit[ed] the liability for injury to those who used the private property." *Id.*; *see Olson v. Bismark Parks & Recreation Dist.*, 642 N.W.2d 864, 870–71 (N.D. 2002) (recreational use statutes encourage recreation that enhances physical wellbeing, have a positive effect on the economy, are an important legislative goal, and do not violate equal protection). The creation of the "recreational user" class not only promotes and furthers the legitimate governmental interest, but enables it. *See Bledsoe v. Goodfarb*, 170 Ariz. 256, 258, n.2 (1991).

## 2. Managers, Including Encanto, Were Not Extended Any Special Privilege by Section 33-1551.

¶33 Normandin further argues the statute unconstitutionally extends immunity to a select group of non-municipal entities to the detriment of other entities. However, *any* "public or private owner, easement holder, lessee, tenant, manager or occupant of premises," *see*

§ 33-1551(A), may avail itself of the statute's immunity, if it opens its land or manages land opened to recreational use and does not charge, or minimally charges, an admission fee for entry. The privilege belongs equally to all such entities. *See* Ariz. Const. art. 2, § 13.

**¶34** Because Normandin failed to clearly show the statute's arbitrariness, and we presume the legislation is rational, § 33-1551 is constitutional as applied in this case. *See Ramirez*, 193 Ariz. at 335, ¶ 34 ("We must presume that the legislation is rational, and such presumption can be overcome only by a clear showing of arbitrariness or irrationality.") (quotation omitted).

### C. Section 33-1551 Is Not an Unconstitutional Special Law as Applied to Managers of Defined Land.

**¶35** Normandin next argues § 33-1551 violates Article 4, Part 2, §§ 19(13) and 19(20), of the Arizona Constitution, because it gives "exclusive privileges and immunities to a favored class of private corporations at the expense of the people that they have negligently injured."[6]

**¶36** Article 4, Part 2, Section 19(13), of the Arizona Constitution, prohibits special laws that "[g]rant[] to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises." The constitution also prohibits special laws if "a general law can be made applicable." Ariz. Const. art. 4, pt. 2, § 19(20). "Special laws favor one person or group and disfavor others." *Gallardo v. State*, 236 Ariz. 84, 88, ¶ 10 (2014).

**¶37** To determine whether a statute is a "special law," our supreme court implemented a three-part test and has been applying it consistently since 1990.[7] *See Gallardo*, 236 Ariz. at 88, ¶ 11. "To survive

---

[6] Again, Normandin does not challenge the statute as a special law as applied to the City.

[7] Encanto argues we should not employ the three-part test because "the relevant constitutional prohibitions against local and special laws . . . contain no three-part test," but "plain constitutional terms." In our analysis, we are bound by our supreme court's decisions, and "th[at] Court alone is responsible for modifying that precedent." *Sell v. Gama*, 231 Ariz. 323, 330, ¶ 31 (2013).

scrutiny, (1) the law must have 'a rational relationship to a legitimate legislative objective,' (2) the classification the law makes must be legitimate, encompassing all members that are similarly situated, and (3) the classification must be elastic, allowing 'other individuals or entities to come within' and move out of the class." *Id.* at ¶ 11 (quoting *Republic Inv. Fund I v. Town of Surprise,* 166 Ariz. 143, 149 (1990)).

**¶38**　　　We have already concluded, *supra* ¶¶ 31, 33, that § 33-1551 is rationally related to a legitimate government interest. Section 33-1551 also creates legitimate classifications, which encompass *all* such entities with control over defined land and *all* recreational users. *See, e.g., Newman*, 173 Ariz. at 459. Finally, the statute is elastic because it allows land owners to opt out, or fall under, the statutory immunity freely by electing to require, or not, a payment of a non-nominal fee or by withdrawing, or extending, their consent to the recreational use of their land. *See* A.R.S. § 33-1551.

**¶39**　　　The statute is not a special law because it survives the scrutiny of the three-part test enunciated in *Gallardo. See* 236 Ariz. at 88, ¶ 11.

### III.　　　Attorney's Fees on Appeal.

**¶40**　　　Normandin requests we award her reasonable costs incurred on appeal. The City and Encanto request we award sanctions against Normandin pursuant to Arizona Rule of Civil Procedure 68(g) (Offer of Judgment) and costs on appeal under Arizona Rule of Civil Appellate Procedure ("ARCAP") 21.

**¶41**　　　Rule 68(g) prescribes that "[a] party who rejects an offer, but does not obtain a more favorable judgment, must pay . . . a sanction: (A) the offeror's reasonable expert witness fees and double the taxable costs, as defined in A.R.S. § 12-332, incurred after the offer date[.]" Ariz. R. Civ. P. 68(g). The amount defined by Rule 68 does not include attorney's fees. Moreover, § 12-332 defines and applies only to taxable costs incurred in the superior court. Although the City and Encanto served an Offer of Judgment on Normandin on October 27, 2016, and we now affirm the superior court's judgment, no part of Rule 68 enables the City or Encanto to recover an amount additional to their reasonable costs incurred on appeal under ARCAP 21. We award the City and Encanto reasonable costs incurred on appeal upon compliance with ARCAP 21.

## CONCLUSION

¶42      For the reasons stated above, we affirm the superior court's judgment in favor of the City and Encanto.



AMY M. WOOD • Clerk of the Court
FILED: AA