IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**MARCIE NORMANDIN,**
*Plaintiff/Appellant,*

*v.*

**ENCANTO ADVENTURES, LLC, ET AL.,**
*Defendants/Appellees.*

No. CV-18-0200-PR
Filed May 17, 2019

Appeal from the Superior Court in Maricopa County
The Honorable Lori Horn Bustamante, Judge
No. CV2015-013292
**REVERSED AND REMANDED IN PART**

Opinion of the Court of Appeals, Division One
245 Ariz. 67 (App. 2018)
**VACATED IN PART**

COUNSEL:

David L. Abney (argued), Ahwatukee Legal Office, PC, Phoenix; Matthew L. McClellan, The McClellan Law Firm PLC, Phoenix, Attorneys for Marcie Normandin

Joseph L. Brownlee (argued), Joshua T. Greer, Moyes Sellers & Hendricks, Ltd., Phoenix, Attorneys for Encanto Adventures, LLC

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BALES and JUSTICES TIMMER, BOLICK, GOULD, and PELANDER (RETIRED) and JUDGE ESPINOSA* joined.

———————

JUSTICE LOPEZ, opinion of the Court:

**¶1**         We consider whether Arizona's recreational use statute, A.R.S. § 33-1551, immunizes Encanto Adventures LLC ("Encanto") from liability in a simple negligence action for injuries Marcie Normandin, a recreational user, sustained after falling in Encanto Park. We hold that Encanto is not a "manager" of land used for recreational purposes and therefore it is not immune from liability under the statute.

**I.**

**¶2**         Encanto operates an amusement park in an area of Encanto Park known as Picnic Island. In 1991, the City of Phoenix (the "City") and Encanto's predecessor executed a concessionaire agreement (the "Agreement") to establish the amusement park wherein the City licensed certain exclusive rights to construct, maintain, and operate children's rides within a fenced-in area of Picnic Island known as Enchanted Island. The Agreement also allowed Encanto's predecessor to use an unfenced portion of Picnic Island adjacent to Enchanted Island known as the "piñata area."

**¶3**         There is no dispute that the Agreement governs Encanto's relationship with the City. Encanto's owner testified in a deposition that for twenty-five years, pursuant to the Agreement, he maintained Picnic Island, including the piñata area, by patrolling, maintaining, inspecting, preparing, and grooming the grounds. Although Encanto has been responsible for the piñata area's maintenance, it does not have exclusive rights to use the piñata area, nor does it otherwise control public access to it.

**¶4**         Normandin paid Encanto $287 for a "Pete's Package" to host her daughter's first birthday party at Enchanted Island. Pete's Package included all-day-ride wristbands for partygoers, as well as tables and a four-hour pavilion reservation. Although Encanto allowed customers to bring a piñata to their party if they broke it outside the fenced-in

_____

* Vice Chief Justice Robert Brutinel has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Philip G. Espinosa, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

Enchanted Park, the package agreement explicitly stated that Encanto would not provide a piñata for the party and that no portion of Normandin's payment would be refunded if she declined to participate in a piñata activity.

¶5        Normandin brought a piñata to the party and Encanto accommodated her, as it did its other customers, by directing her to the public piñata area adjacent to the fenced-in Enchanted Park.  An Encanto employee also led Normandin to the piñata area, hung the piñata for her from a tree outfitted for such purpose, and raised and lowered the piñata as the partygoers tried to break it.

¶6        While walking through the piñata area, Normandin fell, breaking her ankle and injuring her arm.  She alleged she fell because she stepped into a sprinkler-head divot or depression covered by grass.  In her complaint, Normandin pleaded a single count of premises liability, a simple negligence claim, against the City and Encanto.  Encanto and the City moved for summary judgment based on the recreational use immunity provided by § 33-1551(A).  The trial court granted the motions.

¶7        The court of appeals affirmed the trial court's summary judgment in favor of the City and Encanto, concluding that (1) Encanto is immune as a "manager" under § 33-1551(A); (2) Normandin was a "recreational user" under § 33-1551(A); (3) the statute does not violate the anti-abrogation clause of article 18, section 6 of the Arizona Constitution (as applied to Encanto); (4) the statute does not violate the equal privileges and immunities clause of article 2, section 13 of the Arizona Constitution (as applied to Encanto); and (5) the statute is not an unconstitutional special law as applied to managers of defined land in compliance with article 4, part 2, section 19(13), (20) of the Arizona Constitution.  *See generally Normandin v. Encanto Adventures LLC*, 245 Ariz. 67 (App. 2018).

¶8        We granted review because the scope of immunity under § 33-1551 presents a recurring issue of statewide importance.  We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.  Because we resolve this case on the dispositive issue of Encanto's status as a "manager" under the statute, we need not address Normandin's other statutory and constitutional arguments.  *See, e.g., Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 273 (1994) (noting that "if possible we construe statutes to avoid unnecessary resolution of constitutional issues").  Normandin does not contest the City's immunity under the statute.

## II.

¶9        "We review the interpretation of a statute de novo."  *Glazer v. State*, 237 Ariz. 160, 163 ¶ 12 (2015).  Because § 33-1551(A) "limits common-law liability, we must construe it strictly."  *Ward v. State*, 181 Ariz. 359, 362 (1995); *see also Smith v. Ariz. Bd. of Regents*, 195 Ariz. 214, 216 ¶ 9 (App. 1999) ("[W]e must construe [§ 33-1551] strictly to

avoid any overbroad statutory interpretation that would give unintended immunity and take away a right of action."). Summary judgment is appropriate only if "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment de novo, and we view the evidence in the light most favorable to the non-moving party. *Glazer*, 237 Ariz. at 167 ¶¶ 28–29.

¶10 Arizona's recreational use statute, § 33-1551(A), provides:

> A public or private owner, easement holder, lessee, tenant, manager or occupant of premises is not liable to a recreational or educational user except on a showing that the owner, easement holder, lessee, tenant, manager or occupant was guilty of wilful, malicious or grossly negligent conduct that was a direct cause of the injury to the recreational or educational user.

Encanto's sole claim to immunity under § 33-1551(A) rests on its asserted status as a "manager" of the piñata area at the time of Normandin's fall. This claim is unavailing. We are unpersuaded by Encanto's reasoning that its mere maintenance of the piñata area qualifies it as a "manager" under § 33-1551(A), and we also find the court of appeals' reliance on a dictionary definition of "manager" insufficient to discern its proper statutory meaning. *Normandin*, 245 Ariz. at 72–73 ¶¶ 13–14. As discussed below, we conclude that a "manager," when read in the context of the statute and considering the purpose of recreational use immunity, is someone imbued with authority to control the public's access to land for recreational use.

¶11 We first examine the text of the statute to determine the meaning of "manager." *See, e.g.*, *Wilks v. Manobianco*, 237 Ariz. 443, 446 ¶ 8 (2015) ("When interpreting a statute, our primary goal is to give effect to the legislature's intent," and "[w]e derive that intent by examining the statute's language; if the language is ambiguous, we look to the statute's history, context, consequences, and purpose."(citation omitted)). We do not determine the meaning of a word in a statute in isolation; instead, "a statutory term is interpreted in context of the accompanying words." *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 326 ¶ 13 (2011); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195–96 (2012) (discussing the *noscitur a sociis* canon and stating that it "especially holds that 'words grouped in a list should be given related meanings'" (quoting *Third Nat'l Bank in Nashville v. Impac Ltd.*, 432 U.S. 312, 322 (1977))).

¶12 Section 33-1551 does not define "manager," but it provides a critical contextual clue as to the term's meaning. Notably, every other person or entity granted recreational use immunity under § 33-1551(A) —"public or private [land] owner, easement holder,

lessee, tenant, . . . or occupant of premises"—possesses a measure of authority and control over access to property in which that person or entity holds an interest. *See Ward*, 181 Ariz. at 362 (holding that a party is not an "occupant" for purposes of § 33-1551(A) unless they can admit or deny access to the land); *Champie v. Castle Hot Springs Co.*, 27 Ariz. 463, 468 (1925) ("Private property is, in its nature and purpose, a monopoly . . . . One of the most cherished principles of our common law, to use the old phrase, is that 'a man's house is his castle, from which he may exclude any and all persons at will . . . .'"); Restatement (Second) of Prop.: Landlord & Tenant § 6.2 cmts. a–b (Am. Law Inst. 1977) (noting tenants and lessees have the right to possess the leased property free of third-party interference); Restatement (First) of Prop. § 450 cmt. h (Am. Law Inst. 1944) (noting that easement holders have a property interest in the easement and are protected against interference from third parties); *cf.* A.R.S. § 33-1310(16) ("'Tenant' means a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others."). Thus, in its statutory context, "manager" connotes a person or entity with the power to exclude or otherwise control access to property. Any definition of "manager" that includes persons or entities lacking such authority is incongruous with the most relevant characteristic of the other classes listed in § 33-1551(A).

¶**13**    Because the text alone is not dispositive, we also consider the purpose of the statute to assess its meaning. We recognized in *Ward* that the recreational use statute's purpose is "to encourage landowners and others to open lands to recreational users and to continue to keep the lands open." *Ward*, 181 Ariz. at 362; *see also Dickey ex rel. Dickey v. City of Flagstaff*, 205 Ariz. 1, 2 ¶ 7 (2003). In *Ward*, plaintiffs sued the State of Arizona alleging that it (through the Arizona Game and Fish Commission) negligently caused a boating accident on Apache Lake that resulted in their injuries. *See Ward*, 181 Ariz. at 361. The State—which had an agreement with the United States Forest Service to administer a maritime navigational aid program on the lake—argued it was immune from liability because it was an "occupant" of Apache Lake for purposes of § 33-1551(A). *Id.* at 361–62. The trial court granted, and the appellate court affirmed, the State's motion for summary judgment. *Id.* at 361. On review, we reversed because the State did not qualify as an "occupant" under the statute. *Id.* at 362–63. Because "occupant" was not defined in § 33-1551, we considered the statute's purpose to encourage owners to open property for recreational use and determined that the State did not meet that purpose because it lacked authority to control access to Apache Lake—it merely had an agreement to create and maintain a system of navigational aids. *Id.*

¶**14**    Here, Encanto's expansive definition of "manager," like the State's proposed definition of "occupant" in *Ward*, fails to advance the purpose of the recreational use statute because Encanto does not have the authority to open, or for that matter to close, the piñata area for recreational use. *See Stramka v. Salt River Recreation, Inc.*, 179 Ariz. 283, 286 (App. 1994) (reasoning that the purpose of the recreational use statute is not fulfilled by granting immunity to a concessionaire who does not open land for public use but

merely uses it to generate business profits for itself).  Our decision in *Ward* forecloses Encanto and the court of appeals' expansive definition of "manager."

¶15        The legislative history of § 33-1551 bolsters our conclusion that Encanto's broad definition of "manager" is incongruent with the text and purpose of the statute. The term was added to the statute in 2011 to clarify that immunity applies to "managers" just as it applies to "landowners" and "lessees."  Ariz. State Senate Fact Sheet for S.B. 1229, 50th Leg., 1st Reg. Sess. (Apr. 14, 2011) (stating that the amendment "[c]larifies that tenants and managers of public and private land are among those landowners and lessees that are not liable to a recreational or educational user who engages in prescribed activities on their premises").  The 2011 amendments also modified the statutory definition of "recreational user" to include "persons engaging in off-highway vehicle, off-road recreational motor vehicle, all-terrain vehicle, other outdoor recreational pursuits and operation of aircraft" (each of which often occur on state land) and clarified that the State Land Department's issuance of recreational permits or "off-highway vehicle indicia" to recreational users for such purposes did not impact the statute's immunity provisions.  *Id.*  Thus, to the extent the legislative history analogizes "managers" to "landowners" and "lessees" and otherwise associates the term with the State Land Department's management of state lands, it refutes any notion that "manager" was included to extend recreational use immunity to someone who lacks authority to open land for recreational use.

¶16        Here, applying our definition of "manager," we conclude that Encanto does not qualify as such under the recreational use statute.  Encanto contends that it is a "manager" because it patrols, maintains, inspects, prepares, and grooms the piñata area. But Encanto's relationship with the City belies Encanto's claim to any managerial status; it merely maintains the piñata area and pays the City as part of its concession.  It is also clear from paragraph 41 of the Agreement that Encanto is an independent contractor—a licensee and not a lessee—and the parties have no other relationship beyond the contours of the Agreement.  Indeed, "manager" is never mentioned in the Agreement.  More importantly, although Encanto is required to maintain the premises, including the piñata area, as noted above, it lacks any authority to open or close the piñata area for recreational use.  The City, not Encanto, has this authority.  Finally, if Encanto's broader definition of "manager" were correct, any independent contractor (e.g., landscaper, sprinkler repairer, tree-trimmer, or groundskeeper) would be a "manager," thus enlarging the class of persons granted immunity beyond the purpose of the statute.

### III.

¶17        The text, purpose, and legislative history of § 33-1551, our decision in *Ward*, and our imperative to narrowly construe the statute, support our conclusion that a person or entity does not qualify as a "manager" in the absence of authority to open or close land for recreational use.  Accordingly, we reverse the trial court's summary judgment in favor of Encanto and remand for further proceedings consistent with this opinion.  We vacate

paragraphs 1 and 11 through 42 of the court of appeals' opinion pertaining to Encanto but leave intact the part of the opinion affirming summary judgment for the City of Phoenix.