NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CAMELOT HOMES, *Third-Party Plaintiff/Appellant*,

*v.*

GENARO'S FRAMING CONSTRUCTION LLC, *Third-Party Defendant/Appellee.*

No. 1 CA-CV 19-0704
FILED 6-9-2020

Appeal from the Superior Court in Maricopa County
No. CV2016-005810
The Honorable Connie Contes, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Righi Fitch Law Group, P.L.L.C., Phoenix
By Richard L. Righi, Benjamin L. Hodgson
*Counsel for Third-Party Plaintiff/Appellant*

Sanders & Parks, P.C., Phoenix
By Mark G. Worischeck, Dillon J. Steadman
*Counsel for Third-Party Defendant/Appellee*

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

**C R U Z**, Judge:

¶1        Camelot Homes ("Camelot") appeals the superior court's ruling denying leave to amend its third-party complaint and granting summary judgment against it on its third-party complaint, and the court's judgment awarding attorneys' fees to Genaro's Framing Construction ("Genaro's"). For the following reasons, we affirm. However, we vacate and remand on the issue of attorneys' fees.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mark Hancock Development Corporation contracted with Younger Brothers ("YB") to perform trade contract work at a residential development. Camelot is listed on the contract as the seller associated with the residential development. YB subcontracted with Genaro's to perform framing work, and Genaro's further subcontracted with Alvarez Framing Services ("Alvarez"). YB and Genaro's never performed any framing work at the residential development. Alvarez's employee, Vicente Cabrera, was injured at the development on July 3, 2014, when he attempted to manually lift a framing wall off the ground without mechanical assistance.

¶3        Cabrera filed a complaint against Camelot alleging negligence and agency/joint venture liability based on his personal injury claim. Camelot answered and filed a third-party complaint against Genaro's alleging common law indemnity and negligence.

¶4        Almost three years later, Genaro's moved for summary judgment on Camelot's third-party complaint. Within weeks of Genaro's moving for summary judgment, Camelot and YB executed an assignment agreement in which YB assigned to Camelot rights in claims, contracts, and damages with and against Genaro's, including contract, tort, and indemnity claims. The assignment agreement referenced the subcontract between YB and Genaro's, which included an express indemnity provision for work performed on the residential construction project.

2

**¶5**        Shortly after executing the assignment agreement, Camelot moved to amend its third-party complaint to allege express indemnity, gross negligence, and breach of contract against Genaro's.

**¶6**        The superior court denied Camelot's motion to amend its third-party complaint, granted Genaro's motion for summary judgment, and awarded Genaro's $70,000 in attorneys' fees.

**¶7**        We have jurisdiction over Camelot's timely appeal under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

I.        Denial of Motion for Leave to Amend Complaint

**¶8**        In its motion to amend its third-party complaint, Camelot sought to assert claims of express indemnity and breach of contract premised on express indemnity against Genaro's by virtue of the assignment agreement between Camelot and YB and the subcontract between YB and Genaro's. Camelot also sought to allege that it was a third-party beneficiary of the assignment agreement and the subcontract between YB and Genaro's and that Genaro's breached a contractual safety duty to maintain a safe work environment. Finally, Camelot sought to assert a gross negligence claim against Genaro's, alleging Genaro's owed Camelot a duty to maintain a safe working environment. The superior court denied the motion, finding as a matter of law Camelot could not prevail under any of the claims.

**¶9**        We review for an abuse of discretion the denial of a motion for leave to amend. *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 292, ¶ 25 (App. 2010). Although granting leave to amend is within the superior court's discretion, "[l]eave to amend must be freely given when justice requires." Ariz. R. Civ. P. 15(a)(2); *ELM Ret.*, 226 Ariz. at 292, ¶ 25. We will affirm denial of leave to amend absent clear abuse of discretion. *In re Estate of Torstenson v. Valley Nat'l Bank*, 125 Ariz. 373, 376 (App. 1980). Denying leave to amend when the movant has unduly delayed or the amendment is futile is not an abuse of discretion. *Id.* at 376-77 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1972)).

**¶10**        Cabrera was injured in 2014 and filed his personal injury lawsuit in 2016. Camelot was the sole defendant. Cabrera did not sue YB and the statute of limitations on Cabrera's claims against YB expired at the latest in 2016. *See* A.R.S. § 12-542. Camelot waited until 2019 to execute an assignment agreement with YB and seek leave to amend to add new claims

based solely on the assignment agreement. This delay was five years after the underlying injury occurred, three years after the underlying lawsuit had been filed, two and a half years after Camelot filed its third-party complaint, and after Genaro's filed its motion for summary judgment on the third-party claims.

¶11 Further, the assignment agreement purported to assign to Camelot all rights in claims and damages against Genaro's, including claims YB may have had arising out of contract, tort, or indemnity. But YB had no rights arising out of express indemnity or tort in 2019. It had not been sued and could never be liable to Cabrera on these claims. Thus, Camelot's proposed express indemnity claim, breach of contract claim premised on express indemnity, and gross negligence claim premised on a contractual relationship were futile as a matter of law.

¶12 Additionally, Camelot in part bases its proposed contract claim on an alleged breach of a contractual safety provision arising from its purported third-party beneficiary status from the various agreements. Specifically, Camelot alleges it, as YB's "client" in the original agreement between Camelot and YB, is an intended third-party beneficiary of the YB/Genaro's agreement and, consequently, an intended third-party beneficiary of the Genaro's/Alvarez subcontract. But YB/Genaro's and the Genaro's/Alvarez agreements do not mention Camelot or YB's "client." And until the present lawsuit, Camelot did not even know YB and Genaro's entered a subcontracting agreement. Simply stated, Camelot is not a third-party beneficiary of the YB/Genaro's and the Genaro's/Alvarez agreements such as to give rise to a breach of contract claim. *See Nahom v. Blue Cross & Blue Shield of Ariz., Inc.*, 180 Ariz. 548, 552 (App. 1994) (recovery as third-party beneficiary requires indication in contract of intent to intentionally and directly benefit that third party and third party must be primary party in interest); *Irwin v. Murphey*, 81 Ariz. 148, 153 (1956); *Sherman v. First Am. Title Ins. Co.*, 201 Ariz. 564, 567, ¶ 6 (App. 2002).

¶13 The gross negligence claim, for which Camelot argues Genaro's owes a duty based on this same contractual relationship, also fails as futile. Because Camelot was not a party to the contract between YB and Genaro's, Genaro's did not owe Camelot a duty to comply with that contract and thus could not have breached any duty to Camelot. And, as discussed above, the purported assignment of any claims arising in tort did not give rise to a contractual duty. Further, *Sarmiento v. Stubblefield's Custom Concrete, Inc.*, 178 Ariz. 440 (App. 1994) does not establish a non-contractual duty, as argued by Camelot. *Sarmiento* does not impose an upstream duty from a subcontractor to a general contractor. 178 Ariz. at 442-43 (holding

subcontractor "had a duty to exercise available discretion in performing its work to avoid creating an unreasonable risk to other subcontractors' employees"). In the absence of duty, Camelot cannot be liable to Genaro's for gross negligence. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 11 (2007).

**¶14** Because we find Camelot unduly delayed in seeking amendment and the proposed amendments are futile, the superior court did not abuse its discretion in denying leave to amend. *Torstenson*, 125 Ariz. at 376-77.

II. Motion for Summary Judgment

**¶15** We review *de novo* the grant of summary judgment, viewing the "evidence in the light most favorable" to Camelot, against whom summary judgment was taken. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460, ¶ 9 (2019). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a).

**¶16** After Camelot filed its motion to amend the complaint, and in response to Genaro's motion for summary judgment, Camelot notified the court that it was "no longer alleging a count of common law/implied indemnity against Genaro's, and as such, Genaro's motion for summary judgment on this withdrawn count is now moot." Given Camelot's withdrawal of its negligence and common law indemnity claims, and its failure to set forth any facts demonstrating a genuine issue for trial on these claims, we affirm summary judgment. Ariz. R. Civ. P. 56(e) (to demonstrate a triable issue of fact, party opposing summary judgment must set forth specific facts demonstrating genuine issue for trial).

III. Attorneys' Fees

**¶17** Camelot argues Genaro's is not entitled to the full attorneys' fee award of $70,000 under A.R.S. § 12-341.01(A) because its claims of common law indemnity and negligence asserted in its third-party complaint do not arise out of contract. Camelot argues the fee award should be reduced by at least $47,625, representing the amount of fees and costs incurred by Genaro's before Camelot attempted to amend the complaint to assert contractual claims.

**¶18** We review *de novo* the application of A.R.S. § 12-341.01(A) to Camelot's claims. *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 26, ¶ 24 (App. 2006). Attorneys' fees under A.R.S. § 12-341.01(A) are limited to actions "arising out of a contract."

¶19　　　　In analyzing whether a tort claim such as negligence "arises out of a contract," this court explained:

> [T]he court should look to the fundamental nature of the action rather than the mere form of the pleadings. The existence of a contract that merely puts the parties within tortious striking range of each other does not convert ensuing torts into contract claims. Rather, a tort claim will "arise out of contract" only when the tort could not exist "but for" the breach or avoidance of contract. When the duty breached is one implied by law based on the relationship of the parties, that claim sounds fundamentally in tort, not contract. In such cases, it cannot be said that the plaintiff's claim would not exist "but for" the contract. The test is whether the defendant would have a duty of care under the circumstances even in the absence of a contract.

*Ramsey Air Meds, LLC v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15-16, ¶ 27 (App. 2000). In its third-party complaint, Camelot alleged a breach of a duty to comply with a safety standard of care. Although Camelot references the various subcontracts in the third-party complaint, Camelot had no contract directly with Genaro's. Instead, Camelot's alleged duty seems to be that of the general contractor's duty of care to provide a safe work environment, which is implied in law. *See Lewis v. N.J. Riebe Enters., Inc.*, 170 Ariz. 384, 388 (1992). As such, Camelot's negligence claim does not arise out of contract.

¶20　　　　Moreover, common law indemnity is an equitable claim based on an obligation of "one party to make good a loss or damage another party has incurred." *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 241-42, ¶¶ 18-20 (App. 2006) (internal quotation marks and citation omitted); *see also Masaryk v. Mendolsohn Constr. LLC*, 1 CA-CV 13-0085, 2015 WL 1456636, at *5, ¶ 20 (Ariz. App. Mar. 31, 2015) (mem. decision). Because an equitable remedy is not a theory of contract recovery, A.R.S. § 12-341.01 does not apply to a common law indemnity claim. *See Double AA Builders, Ltd. v. Grand State Constr. LLC*, 210 Ariz. 503, 511-12, ¶¶ 45-48 (App. 2005) (promissory estoppel is an equitable remedy and A.R.S. § 12-341.01(A) did not apply).

¶21　　　　Because Camelot's third-party claims do not arise out of contract, we vacate the attorneys' fee award and remand for the superior court's recalculation as it relates to reasonable fees incurred in connection

with Camelot's late assertion of breach of contract and contractual indemnity claims.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm the superior court's ruling denying leave to amend Camelot's third-party complaint and granting summary judgment to Genaro's. We vacate the attorneys' fee award and remand for recalculation by the superior court. In the exercise of our discretion, we decline to award attorneys' fees to either party, but we award costs to Genaro's upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:   AA