IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

3 SL FAMILY, LLC, *Plaintiff/Appellee/*
*Cross-Appellant,*

*v.*

STATE OF ARIZONA, et al., *Defendants/Appellants/*
*Cross-Appellees.*

No. 1 CA-CV 22-0247

FILED 10-30-2024

Appeal from the Superior Court in Maricopa County
No.  CV2016-010461
The Honorable Jay R. Adleman, Judge

**REVERSED**

COUNSEL

May, Potenza, Baran & Gillespie, P.C., Phoenix
By Jesse R. Callahan, Andrew S. Lishko, Irania Fimbres-Ruiz
*Counsel for Plaintiff/Appellee/Cross-Appellant 3 SL Family, LLC*

Sherman & Howard L.L.C., Phoenix
By Gregory W. Falls, Matthew A. Hesketh
*Counsel for Defendants/Appellants/Cross-Appellee State of Arizona, the Arizona*
*Department of Health Services, and Don Herrington*

---

## OPINION

Chief Judge David B. Gass delivered the opinion of the court, in which Judge Brian Y. Furuya joined. Judge Andrew M. Jacobs dissented.

---

**G A S S**, Chief Judge:

¶1 The dispute arises out of the award in 2016 of a medical marijuana dispensary registration certificate under the Arizona Medical Marijuana Act. The dispute requires us to decide whether two phrases in the Act—"a public or private school" and "any preschool or primary or secondary school"—have the same meaning. *See* A.R.S. §§ 36-2804.B.1(b)(ii) (first phrase), -2802.B.2 (second). The Act does not define the terms "school" or "preschool."

¶2 Plaintiff 3SL Family, LLC filed this litigation challenging the 2016 award, arguing the two phrases within different sections of the Act have the same meaning. The superior court agreed. Defendants the State of Arizona, the Arizona Department of Health Services, and Jennie Cunico, the Department's Cabinet Executive Officer and Executive Deputy Director (collectively, the Department), disagreed and appealed the superior court's judgment.

¶3 Because statutes mean what they say, we conclude the two phrases do not have the same meaning and the two preschools at issue here are not "a public or private school" under the Act. A.R.S. § 36-2804.B.1(b)(ii). We thus reverse the superior court's summary judgment in 3SL's favor. As a result, we need not address 3SL's cross-appeal.

### FACTUAL AND PROCEDURAL HISTORY

I.   **Arizona's voters enacted the Act, and the Department established enabling rules as prescribed by the Act.**

¶4 In 2010, Arizona's voters passed the Act, mandating the Department administer a medical marijuana program. *White Mountain Health Ctr., Inc. v. Maricopa Cnty.*, 241 Ariz. 230, 233 ¶ 3 (App. 2016). *See generally* A.R.S. §§ 36-2801 to -2822. The Department monitors and regulates the licensing of medical marijuana dispensaries and laboratories. *See* A.R.S.

§ 36-2804. Under the Act, a nonprofit entity seeking to operate a dispensary must apply for and obtain a dispensary registration certificate from the Department. A.R.S. § 36-2804.A–B. And the Department must not issue a certificate to a proposed dispensary or laboratory if it is "within five hundred feet of a public or private school existing before the date of" the application. A.R.S. §§ 36-2804.B.1(b)(ii); -2804.07.B.1(b)(ii).

**¶5**          The Department established rules regulating the certificate allocation process. *See* Arizona Administrative Code (A.A.C.) R9-17-303. Based on the statutory 500-feet limit, the Department adopted a rule requiring it to deny an application proposing a dispensary location "within 500 feet of a private school or a public school that existed before the date the dispensary submitted the initial dispensary registration certificate application." A.A.C. R9-17-322.A.1.

## II.    During the 2016 application period, the Department awarded a certificate to 3SL's competitor.

**¶6**          During the 2016 application period, the Department determined three applications were substantively complete and compliant for licensure in the relevant geographic area. 3SL was one of the three qualified applicants. The Department followed A.A.C. R9-17-303's priority scheme and the applicable selection process, and it awarded the certificate to another of the applicants—what we call here the winning applicant. *See* A.A.C. R9-17-303.B.4.

**¶7**          The winning applicant proposed a dispensary location within 500 feet of two licensed child-care facilities. Though the two facilities called themselves "preschools," Arizona does not license preschools. During the application process, the Department received a complaint alleging the winning applicant's proposed dispensary location was within 500 feet of two "schools." The Department investigated and determined the alleged "schools" were, in fact, preschools and thus not schools under the Act.

## III.   3SL sued the Department.

**¶8**          In December 2016, 3SL filed a statutory special action alleging the Department erred because the winning applicant's proposed dispensary location violated the Act's 500-foot limitation. During discovery, the Department investigated the two preschools. One offered weekly learning plans focused on reading, writing, art, science, and physical activity. The other offered curricula in mathematics, art, science, writing, and reading. Those curricula did not change the Department's

analysis because the preschools did not meet the criteria to be considered schools under the Act.

**¶9**　　　　The Department and 3SL cross-moved for summary judgment. The superior court denied the Department's motion and granted 3SL's motion in part, ruling the Department misapplied the law. The superior court found the preschools met Title 15's definition of "private school" because the preschools were "nonpublic institution[s] where instruction is imparted." A.R.S. § 15-101.21. The superior court denied 3SL's claims for declaratory and other relief. In February 2022, more than five years after this matter began, the superior court entered an appealable judgment.

**¶10**　　　　This Court has jurisdiction over the Department's timely appeal and 3SL's timely cross-appeal under article VI, § 9, Constitution of Arizona, and A.R.S. §§ 12-120.21.A.1 and -2101.A.1.

## ANALYSIS

**¶11**　　　　Summary judgment is appropriate when "no genuine dispute as to any material fact" exists and "the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). "This court reviews a grant of summary judgment *de novo*, viewing the facts and reasonable inferences in the light most favorable to the party opposing the motion and will affirm for any reason supported by the record, even if not explicitly considered by the superior court." *CK Fam. Irrevocable Tr. No. 1 v. My Home Grp. Real Est. LLC*, 249 Ariz. 506, 508 ¶ 6 (App. 2020) (as amended).

**¶12**　　　　This court reviews questions of statutory interpretation *de novo. J.L.F. v. Ariz. Health Care Cost Containment Sys.*, 208 Ariz. 159, 161 ¶ 10 (App. 2004). A statute's plain language guides its interpretation. *See Ariz. Advoc. Network Found. v. State*, 250 Ariz. 109, 114 ¶ 19 (App. 2020). If the statute's plain language is unambiguous, this court "must give effect to that language without employing other rules of statutory construction." *Parsons v. Ariz. Dep't of Health Servs.*, 242 Ariz. 320, 323 ¶ 11 (App. 2017). This court gives "terms their ordinary and commonly accepted meaning, unless the legislature [or in this case the voters] has provided a specific definition." *See JH2K I LLC v. Ariz. Dep't of Health Servs.*, 246 Ariz. 307, 310 ¶ 9 (App. 2019).

**¶13**　　　　This court determines "the plain meaning of the words the legislature" or voters chose by viewing those words "in their broader statutory context." *In re Drummond*, ___ Ariz. ___, ___ ¶ 5, 543 P.3d 1022, 1025 (2024) (citation omitted). When this court construes unambiguous

4

statutory terms, it looks "to the statute as a whole and . . . may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Id.* (quoting *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017)). In doing so, this court seeks "to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019). And at all times, this court is "constrained from rewriting the law under the guise of interpreting it even if [this court] divine[s] a more desirable intended outcome than the text allows." *Ariz. Free Enter. Club v. Hobbs*, 253 Ariz. 478, 489 ¶ 38 (2022).

**¶14** Historically, the Arizona Supreme Court said the primary objective in interpreting a voter-enacted law is to effect the voters' intent. *Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 324–25 ¶ 11 (2014). But since this case went at issue, a majority of the members of the current Arizona Supreme Court now reject "discern[ing] and giv[ing] effect to legislative intent" as the goal of statutory interpretation. *See State ex rel. Ariz. Dep't of Revenue v. Tunkey*, 254 Ariz. 432, 437–40 ¶¶ 23–36 (2023) (Bolick, J., concurring joined by Beene, J., Montgomery, J., and King, J.) (quoting *Ariz. Dep't of Revenue v. Action Marine*, 218 Ariz. 141, 143 ¶ 10 (2008)). Those justices clarified intent behind legislation is "never an object [of statutory interpretation] itself" but is simply "a means to discern statutory meaning." *Id.* at 438 ¶ 27. Even "[i]f the legislature agrees on findings, purposes, or definitions," they are "prisms" through which the court determines statutory meaning. *Id.* As those justices explained, "the words of a statute" are not the best evidence of legislative intent, they "are not 'evidence' of anything. They are the law." *Id.* at 437 ¶ 26. Those same principles apply here. Arizona courts use the same interpretive approach for a voter-enacted statute as for a legislature-enacted statute.

**¶15** This court thus must "ascertain statutory meaning" of the Act through the prism of its stated purpose. *See id.* And as the legislature has charged, this court must construe statutes "liberally. . . to effect their objects and to promote justice." A.R.S. § 1-211.B.

## I. The term "private or public school" under the Act does not include a preschool.

### A. The Act's broader statutory context shows the Act unambiguously distinguishes between the terms preschool and school.

**¶16** The Act does not define the terms preschool or school. Even so, a "preschool" is ordinarily and commonly understood as something

qualitatively different from a "school." The etymology of "*pre*school" alone shows it means something before—and thus apart from—"school." That qualitative distinction comports with how Arizona treats the term school in its Constitution and its statutes.

¶17        The facts here highlight that qualitative distinction between the terms preschool and school. The two preschools are licensed as Title 36 child-care facilities, not as schools. *See* A.R.S. § 36-882. One preschool officer testified the preschool presents itself just as a child-care facility. The other preschool's director testified the preschool's purpose is to prepare children for school, not to be a school. At bottom, they are preschools, not schools. And the Department properly treated them as different under the Act.

¶18        That distinction has its roots in Arizona's founding. Arizona has long recognized schools are for school-aged children and not for younger preschool-aged children. Since 1912, Arizona's Constitution has shown that commonly understood distinction. Arizona's Constitution mandates the legislature provide a "public school system." Ariz. Const. art. XI, § 1. That system must include kindergartens, high schools, industrial schools, universities, and "common schools" open for free "to all pupils between the ages of six and twenty-one years." *Id.* §§ 1 (public school systems), 6 ("common schools"). It expressly excludes preschool-aged children.

¶19        Arizona's statutes, including the Act, carry that constitutional distinction forward. Though the Act does not define "preschool," it differentiates "preschools" from other types of schools. In § 36-2804.B.1(b)(ii), the Act mandates the 500-feet limit from an existing "public or private school." In contrast, subsection 36-2802.B ensures the legislature may impose penalties for possessing or engaging in the use of marijuana on a school bus or on the grounds of "any preschool or primary or secondary school." Nothing about those terms or their use suggests any "uncertainty" about their relationship or "more than one rational interpretation" of whether a "preschool" fits within the Act's concept of "schools." *See Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268 (1994).

¶20        Beyond the Act, Title 36 historically has distinguished between the concepts of "preschool" and "school." For example, the legislature charged the Department with assisting with programs about "infant and preschool health *and* the health of schoolchildren." A.R.S. § 36-132.A.8 (emphasis added). The legislature drew a similar distinction between preschool and school when it addressed the Department's obligation to provide services for "persons with developmental

disabilities." A.R.S. § 36-554.A.1(a). The legislature wrote the director must provide services to "persons with developmental disabilities," which may include "infant stimulation, *developmental training for pre-school children and special education at Arizona training program facilities for school-age, children with developmental disabilities* residing at Arizona training program facilities who do not attend public school." *Id.* (emphasis added). And the legislature drew a similar distinction when it wrote the Department may provide "[c]hild services, which may include . . . [d]evelopmental day training and related *preschool* programs." A.R.S. § 36-558.C.1(b) (emphasis added). Title 36, standing alone, shows "a public or private school" under section 36-2804.B.1(b)(ii) does not refer to the same set of institutions as "any preschool or primary or secondary school" under section 36-2802.B.2.

¶21          Another section in Title 36 provides a compelling demonstration of the longstanding statutory distinction between "schools" and "preschools." *See* A.R.S. § 36-798.03.A. In section 36-798.03.A, the legislature defined "school" in a similar context: a statute prohibiting the use of tobacco products at schools. The legislature said "school" in that subsection means "any public, charter or private school where children attend classes in kindergarten programs or grades one through twelve." *Id.* So when we look for a plain understanding of the term "school" in the context of the Act, we need look no further than the Act's own backyard —a neighboring Title 36 statute. *Id.* Though true, section 36-798.03's definition applies just to that section, that section mirrors what the dissent asserts is the Act's unexpressed, secondary inferred concern: protecting children from exposure to a potentially harmful substance. Just in section 36-798, that substance is tobacco.

¶22          We thus give effect to section 36-2804's unambiguous, plain language referring to "a private school or a public school." That language does not include preschools. *See Drummond*, ___ Ariz. at ___ ¶ 5, 543 P.3d at 1025. And we decline the invitation to rewrite "the law under the guise of interpreting it even if we divine a more desirable intended outcome than the text allows." *See Ariz. Free Enter. Club*, 253 Ariz. at 489 ¶ 38. If the legislature and governor disagree with our interpretation, they have the means of amending the voter-enacted Act as long as the amendment furthers the Act's purpose and it receives the requisite votes. *See* Ariz. Const. art. IV, pt. 1, § 1(6)(B) (allowing legislature to amend or supersede a voter-approved law if the proposed legislation (1) "furthers the purposes" of the voter-approved law and (2) is approved by "at least three-fourths of the members of each house of the legislature." *See* Ariz. Const. art. IV, pt. 1, § 1(6)(C), (14).

¶23 Our analysis could end here. We continue to address the dissent's interpretation of "preschool" as a "school" and the practical consequences of that interpretation.

## II. Inconclusive dictionary definitions provide no guidance when interpreting the Act.

¶24 When, as here, the meaning of a statutory term is made plain from the context of the statute, we need not—and should not—consider extraneous dictionary definitions. *Drummond*, ___ Ariz. at ___ ¶ 9, 543 P.3d at 1026. In *Drummond*, the Arizona Supreme Court recently said, "inconclusive dictionary definitions do not render the term ambiguous," and Arizona courts "do not view statutory words in isolation, but rather draw their meaning from the context in which they are used." *Id.* (cleaned up). Our above analysis aligns with *Drummond* and comprehensively considers the Act's statutory context.

¶25 The dissent acknowledges that different dictionary definitions describe a preschool either as a "nursery" or a "school," consistent with either the majority or the dissent. *See infra* Dissent ¶¶ 77–78. The dictionary definitions thus are inconclusive and irrelevant, and the dissent misplaces its reliance on them. Instead, Arizona law, not a dictionary, shows the ordinary and commonly accepted meaning of the term "school" does not include preschools.

## III. The Department's regulatory definitions are irrelevant when this court interprets the Act.

¶26 The meaning of a statutory term is a question of law for this court. *See Batty v. Ariz. Med. Bd.*, 253 Ariz. 151, 154 ¶ 11, 156 ¶ 19 (App. 2022). This court must "decide all questions of law, including the interpretation of a constitutional or statutory provision or a rule adopted by an agency," such as the Department, "without deference to any previous determination that may have been made on the question by the agency." *See* A.R.S. § 12-910.F. For that reason, we construe the Act's terms without deference to or consideration of the Department's definitions in the A.A.C. *Batty*, 253 Ariz. at 154 ¶ 11. Though we give no deference to the Department's other regulations, we consider them merely to round out our discussion of the dissent's analysis. *See* A.R.S. § 12-910.F.

¶27 The dissent attempts to corroborate its analysis by relying on a single, now-repealed, Department regulation. *See infra* Dissent ¶¶ 50, 84–85. That regulation applies just to the Department's programs for testing children's ability to hear, nothing more. *See* A.A.C. R9-13-101.29, 33 (2002)

(defining "preschool" and "school" solely to regulate hearing tests).[1] Even without the express limit on the regulation's application, the statute underlying that regulation is not "*in pari materia*—of the same subject or general purpose"—as the Act. *See Drummond*, ___ Ariz. at ___ ¶ 5, 543 P.3d at 1025 (quoting *Stambaugh*, 242 Ariz. at 509 ¶ 7). That regulation thus is irrelevant.

¶28　　　　The dissent also does not address the broader regulatory context. Indeed, the Department has defined "schools," "private schools," and "school-age children" in more than one regulation, and those other regulations do not support the dissent's analysis.

- R9-3-101.69 defines "school-age child" within child-care group home regulations.

- R9-5-101.93, 96, and 101 define "private school," "public school," and "school-age child" within child-care facility regulations.

- R9-6-101.70 defines "school" within communicable disease prevention regulations.

- R9-8-701.29 and 37 define "private school" and "school" within public school hygiene regulations.

- R9-23-101.9 defines "school" within school oral health program regulations.

¶29　　　　These regulations differ substantially from the one on which the dissent relies. Each distinguishes between preschools and schools. Not one suggests a preschool is a school or a preschool-aged child is a school-aged child.

¶30　　　　Though the Department's child-care facilities licensing regulations do not use the term "preschool," those regulations contrast child care for "school-age" children who are five or older and attend school at the kindergarten level or above with child care for children under "school age." *See* A.A.C. R9-5-101.101 (defining "school-age child"); R9-5-204.A.4–8 (establishing separate child-care service classifications for "school-age child care" and child care for ages five and under). And those definitions were in effect in 2016 and currently remain in effect. *See infra* Dissent ¶¶ 50, 57, 84

---

[1]　　　　The definitions for "preschool" and "school" took effect in 2002 and were numbered 29 and 33, respectively. The definitions were last amended in 2019 and were renumbered 51 and 55, respectively.

–85 (ascribing meaning to the timing of the effect of A.A.C. R9-13-101.29, 33 (2002) and its repeal). And they do not support the dissent's statutory interpretation.

¶31 A long list of Department regulations also sets differing requirements for child-care providers depending on whether they serve "school-age" children or younger children. *See* A.A.C. R9-5-306.A.6 (school -age children with their parents' permission may admit or release themselves from a child-care facility); R9-5-404.A (lowest staff-to-child ratio requirement for school-age children); R9-5-501.A.2–3 (requiring facility to make drinking water available to school-age children also to younger children); R9-5-506 (requiring child-care facilities to provide supervision and privacy for bathroom visits, activity supplies, and quiet study areas for school-age children); R9-5-511.E.3 (not requiring naptime accommodations be available for school-age children unless they or their parents request it); R9-5-603.D (requiring a lower standard of fencing for outdoor areas exclusively used by school-age children at child-care facilities operated at a public school); R9-5-605.B.6 (excluding rooms used just by school-age children from requirement to cover electrical sockets).

¶32 The above discussion should not suggest we rely on the Department's other regulations to interpret the Act. We do not. The discussion merely contrasts the Department's other regulations with the dissent's reliance on a lone, unrelated, now-repealed regulation.

## IV. Though not controlling, Title 15's use of the terms "preschool" and "private school" tracks Title 36's use.

¶33 We need not look to Title 15 to determine the Act's meaning. That said, *JH2K* did look to Title 15. And though the dissent objects to looking to Title 15, it relies heavily on *JH2K*. For that reason, we note Title 36's use of the term "school" tracks Title 15's use. *See* A.R.S. § 15-101.22; § 36-882. And Title 15 treats the terms preschool and school differently.

¶34 In Title 15, the legislature said, "'[s]chool' or 'public school' means any public institution established for the purposes of offering instruction to pupils in programs for *preschool children with disabilities*, kindergarten programs or any combination of elementary grades or secondary grades one through twelve." A.R.S. § 15-101.22 (emphasis added). Under that definition and consistent with Title 36, "preschool children" attend school solely if they are receiving instruction in programs "for preschool children with disabilities." *Id.* Otherwise, schools provide "kindergarten programs or any combination of elementary grades or

secondary grades one through twelve." *Id.* That definition is notable for its consistency with the Arizona Constitution requiring the State to provide free education to "all pupils between the ages of six and twenty-one years," including kindergartens, high schools, industrial schools, universities, and "common schools." *See* Ariz. Const. art. XI, §§ 1, 6.

**¶35** Consistent with the plain meaning of the term "school" in Title 36, Title 15 defines "[p]reschool child" as "a child who is at least three years of age but who has not reached the required age for kindergarten." A.R.S. § 15-761.23. In contrast, section 15-802.A requires all children "between the ages of six and sixteen" to "attend a school" and to "be provided instruction in at least the subjects of reading, grammar, mathematics, social studies and science." Title 15 thus distinguishes between preschools and schools (whether private or public) in two ways: student age and instruction requirements.

**¶36** As noted above, we give no weight to the Department's interpretation of the Act and its reliance on Title 15. *See supra* Opinion ¶ 26 (discussing section 12-910.F and *Batty*, 253 Ariz. at 154 ¶ 11, 156 ¶ 19). Even so, we mention the Department's definitions to explain our determination that the Department did not err when it approved the certificate here. The Department adopted an A.A.C. rule consistent with the Act's usage, incorporating Title 15's definitions:

> "Private school" means a nonpublic institution where instruction is imparted.

> "School" or "public school" means any public institution established for the purposes of offering instruction to pupils in programs for preschool children with disabilities, kindergarten programs or any combination of elementary grades or secondary grades one through twelve.

A.A.C. R9-17-101.23, 25 (2012) (using definitions from section 15-101.21, 22).[2]

**¶37** Though we give those definitions no weight, they track our interpretation of the Act's plain language. And no one argues the Department erred if those definitions stand.

---

[2] The definitions for "private school" and "public school" took effect in 2012 and were numbered 23 and 25, respectively. The definitions were last amended in 2023 and were renumbered 39 and 40, respectively.

**V. All preschools are not schools just because the two child-care facilities here bear some hallmarks of a school.**

¶38 The dissent posits all preschools are schools because the two preschools here have certain attributes. *See infra* Dissent ¶¶ 62-65. That logic fails.

¶39 To begin, the two preschools here are licensed by the Department as child-care facilities under section 36-882 and A.A.C. R9-5-204.A. Licensed child-care facilities are not subject to the same public and private school licensing and attendance requirements. Arizona licenses schools under Title 15. Arizona licenses child-care facilities under Title 36. Arizona does not license or regulate preschools as such.

¶40 Arizona law also does not require any preschool—or child-care facility for that matter—to have the hallmarks the dissent uses to elevate the two preschools here to the status of schools. None of the child-care facilities' features on which the dissent relies to call them schools are mandated by statute or regulation, and the facilities could cease offering them at any time. Preschools have no statutorily mandated educational responsibilities. A.R.S. § 36-882; A.A.C. R9-5-204.A. They have no attendance requirements. *Id.* They have no grading requirements. *Id.* They have no educational requirements for the caregivers. *Id.* A child-care facility need not have any of them.

¶41 The two preschools here have some of those hallmarks, but they do not have all. And though the two preschools here share some characteristics with schools, the two preschools here do not even share all those same characteristics. And whether they will maintain those characteristics is unknown, as they are not statutorily required to do so. The dissent does not explain how, in interpreting Arizona law, we can conclude every preschool is a school just because the two here have some hallmarks of a school when the Department issued the certificate in 2016.

**VI. The dissent's proposed interpretation conflicts with the Act's express purpose and is impractical for the Department and the applicants.**

¶42 A.R.S. § 1-211.B requires us to construe statutes "liberally . . . to effect their objects and to promote justice." In doing so, we consider the impact on the Act's express purpose: "to protect patients with debilitating medical conditions, as well as their physicians and providers, from arrest and prosecution, criminal and other penalties and property forfeiture if such patients engage in the medical use of marijuana." Prop. 203, § 2.G (2010). Our analysis uses that express purpose as the prism to ascertain the

Act's statutory meaning. Based on the *Tunkey* concurrence, we do not, as the dissent does, rely on an inferred intent beyond the Act's express purpose. *Tunkey*, 254 Ariz. 432, 437–40 ¶¶ 23–36.

¶43  Rather than consider the sole express purpose, the dissent infers a different purpose: "to prevent schoolchildren from exposure to marijuana" and to "keep a legal business that is selling marijuana away from a school and its occupants." Dissent at ¶ 48, 74 (citing *JH2K*, 246 Ariz. at 311–12 ¶ 17). The dissent's reliance on *JH2K*'s inferred purpose is flawed under *Tunkey*. *JH2K* was issued without *Tunkey*'s more recent guidance on statutory interpretation and the role of intent. And *JH2K*'s statement of voter intent says nothing about the Act's applicability to preschools. Nothing in *JH2K* supports an inference that "preschool" in section 36-2802 refers to a "school" in section 36-2804. And contrary to the dissent's statement, *JH2K* did not find "[s]ection 2802(B) unambiguous in treating 'preschool' as a type of 'school' containing 'schoolchildren.'" *See infra* Dissent ¶ 73. *JH2K* expressed no such *dicta*. *JH2K* simply interpreted the term "public or private school" in section 36-2804.B.1(b)(ii) to include a school's buildings and its surrounding grounds. *See* 246 Ariz. at 310–12 ¶¶ 10–17.

¶44  The dissent's interpretation will adversely affect the Act's express purpose by undermining the Department's ability to issue dispensary certificates under the Act. Under the dissent's interpretation, the Department would have to adopt regulations treating every private, unlicensed, unregulated entity calling itself a preschool as a school. The Department would have to identify all those entities within 500 feet of each applicant's proposed location. And it would have to perform that analysis on all applications within 30 days of the opening of each new application period. *See* A.A.C. R9-17-107 (setting a 30-day time limit to consider dispensary certificate applications). The dissent would place the same burden on every dispensary certificate applicant during the siting process so the applicant could avoid noncompliance with the 500-feet limit.

¶45  At bottom, the dissent's approach requires a remand to the Department to begin the rulemaking process anew. It would impose new and heightened burdens on everyone involved in the dispensary certificate process. And it would threaten to restrict, rather than expand, access to medical marijuana — in direct contravention of the Act's express principal purpose.

## CONCLUSION

¶46 Because a "preschool" is not a "public or private school" under section 36-2804.B.1(b)(ii), we reverse the superior court's order granting summary judgment. Because we reverse the superior court's order, we deny 3SL's cross-appeal as moot.

**J A C O B S, J., dissenting:**

**¶47**        This is an appeal about the Arizona Medical Marijuana Act ("the Act") and its provisions concerning the siting of medical marijuana dispensaries.  Because the voters did not intend for medical marijuana dispensaries to be sited adjacent to preschools, I dissent.

**¶48**        The specific question posed by this appeal is whether two preschools in Ahwatukee are schools under the Act, so that dispensaries cannot be sited within 500 feet of them.  These preschools are schools, for several reasons.  *First*, "preschool" means "school" under the plain language of Sections 2802 and 2804.  *Second*, we have previously explained that, reading Section 2802 and 2804 together, "the voters' intent was plain: to prevent schoolchildren from exposure to marijuana," and to "keep a legal business that is selling marijuana away from a school and its occupants." *See JH2K I L.L.C. v. Ariz. Dep't of Health Servs.*, 246 Ariz. 307, 311 ¶ 17 (App. 2019) (describing purposes of Sections 2802 and 2804); *see also* A.R.S. § 1-211(B) (requiring us to construe statutes "liberally . . . to effect their objects and to promote justice[]").  *Third*, the Department corroborated this plain meaning analysis through its own contemporaneous definition of "preschool."  *Fourth*, the *noscitur a sociis* canon shows that "preschool" in Section 2802 is one of a group of types of schools whose children the Act shields from marijuana.  The majority's use of the inapt *expressio unius est exclusio alterius* canon to suggest that Section 2804 allows siting dispensaries next to preschools misses the mark because "private schools, public schools, and preschools" is clearly not a parallel construction.  As such, the absence of the word "preschool" from Section 2804 proves nothing.  *Fifth*, the Department's effort to redefine the Act by using terms in Title 15 fails because the law the voters enacted avoided any such cross-referencing.

**¶49**        We should affirm the superior court's grant of summary judgment for 3SL, which honors the plain meaning of the Act, harmonizes the Act's closely related provisions as we did in *JH2K I*, and gives effect to the Act's purpose:  protecting legal marijuana sellers and users from accidental entanglements with the criminal law, which the Act accomplishes in part by shielding Arizona schoolchildren from exposure to medical marijuana that is legally grown, sold, and used.

## FACTS AND PROCEDURAL BACKGROUND

**A.    The Department Enacted Regulations Defining Preschools as Schools in 2002 and Kept Those Regulations on the Books Long After the Voters Passed the Act in 2010.**

**¶50**    The Department considered preschools to be schools for seventeen years after it promulgated this regulation in 2002, including on October 6, 2016, when the Department issued a certificate to a dispensary allowing it to operate next to a preschool:

29.    *"Preschool" means the instruction preceding kindergarten provided to individuals three to five years old through a*:

a.    School as defined in A.R.S. § 15-101,
b.    Accommodation school as defined in A.R.S. § 15-101,
c.    Charter school as defined in A.R.S. § 15-101, or
d.    *Private school as defined in A.R.S. § 15-101*.

\*        \*        \*

33.    *"School" means*:

a.    School as defined in A.R.S. § 15-101;
b.    *Preschool*,
c.    Kindergarten,
d.    Accommodation school as defined in A.R.S. § 15-101,
e.    Charter school as defined in A.R.S. § 15-101, or
f.    Private school as defined in A.R.S. § 15-101

A.A.C. R9-13-101(29), (33) (2002) (emphases added).

**B.    In 2010, the Voters Passed the Act, Physically Separating Medical Marijuana Purchasing and Consumption from School Campuses.**

**¶51**    In the November 2010 general election, the voters approved Proposition 203, the Arizona Medical Marijuana Act ("the Act"), making the Act law. *See* A.R.S. §§ 36-2801 to -2819. The majority correctly notes that a purpose of the Act is to "protect patients . . . as well as their physicians and providers, from arrest and prosecution, criminal and other penalties . . . [for] medical use of marijuana." Proposition 203, § 2 ("Prop. 203"); *see*

Paragraph 42, *supra*. Much of the Act is devoted to how dispensaries register with the department, and how it certifies them. *See generally id.*

¶52 Two related provisions within the Act, however, concern the relationship of medical marijuana to schools, and by extension, schoolchildren. The first provision, A.R.S. § 36-2802(B)(2), authorizes imposing penalties for possessing or engaging in the medical use of marijuana "[o]n the grounds of any preschool or primary or secondary school." Indeed, the legislature soon acted to impose those penalties at each of these types of schools. *See* A.R.S. § 15-108(B) (prohibiting "possess[ion] or use [of] marijuana on the campus of any high school, junior high school, middle school, common school, or preschool"). The second provision, A.R.S. § 36-2804(B)(1)(b)(ii), bars the state from siting a medical marijuana dispensary "within five hundred feet of a public or private school" predating the Act. Taken together, these twin provisions of the Act separate Arizona's schools and schoolchildren from the cultivation, dispensing, and use of medical marijuana. *See JH2K I*, 246 Ariz. at 311 ¶ 17. This keeps dispensers and users of medical marijuana free from arrest, and maintains a protective buffer between schoolchildren and the cultivation, dispensing, and use of medical marijuana. These purposes are inextricably related.

C. **Even Though It Defined Preschools as Schools, the Department Decided to Treat Preschools as Irrelevant to Siting Marijuana Dispensaries and Cultivation.**

¶53 The Act authorizes the Department to issue a Dispensary Registration Certificate ("DRC") to qualifying applicants of proposed dispensaries. A.R.S. § 36-2804(A)-(B). The Act also authorizes the Department to regulate the certification of medical marijuana dispensaries. *See* A.R.S. § 36-2804.

¶54 Applying its regulations, the Department reviews applications for DRCs. A.A.C. R9-17-303. The Department's regulations require it to complete an administrative review of an application within five business days. A.A.C. R9-17-107(A). After the administrative review, the Department must then complete a substantive review of applications within twenty-five business days. A.A.C. R9-17-107(D).

¶55 During this review, the Department must check if a proposed dispensary is within 500 feet of a public or private school. *See* A.A.C. R9-17-303(A)(1)(c). The Department's rules repeat the prohibition in A.R.S. § 36-2804(B)(1)(b)(ii) against issuing a DRC to an applicant that does not meet the 500 feet criterion. A.A.C. R9-17-322(A)(1).

**¶56** The Department's 2012 rulemaking defines a "school" that creates a 500-foot zone of exclusion within which the Department may not site a dispensary. *See* A.A.C. R9-17-322(A)(1); A.A.C. R9-17-101(23), (25) (2012). Any "private school" or "public school" is such a school. A.A.C. R9-17-322(A)(1) (2012). As the majority correctly notes, the Department defined private school as it is defined in A.R.S. § 15-101, and thus means "a nonpublic institution where instruction is imparted." *See* A.R.S. § 15-101(21) (defining "private school").

**¶57** As noted above, at all relevant times in 2016, the Department defined "preschool" as "the instruction preceding kindergarten provided to individuals three to five years old through a . . . private school" and defined "school" as including "school," "preschool" and "kindergarten." A.A.C. R9-13-101(29), (33) (2002).

**D. The Department Knew Before It Issued the DRC at Issue That the Proposed Dispensary Was Within 500 Feet of Two Preschools, Later Shown to Be Private Schools That Imparted Instruction.**

**¶58** The Department determined in mid-2016 it could issue more DRCs and announced it would accept applications during July 2016. 3SL applied during this application period for a DRC in a defined geographic zone (CHAA 78) in Ahwatukee.

**¶59** During the application process, the Department received a complaint regarding one applicant's proposed dispensary location stating it was within 500 feet of two preschools, Ahwatukee Preschool and Grace Garden Christian Preschool. The proposed dispensary was literally adjacent to the Grace Garden Christian Preschool.

**¶60** The Department conducted a perfunctory examination, noting that it licensed both preschools as childcare facilities. The Department's investigation "ends pretty quickly" after finding it licenses preschools as childcare facilities. The Department did not attempt in 2016 to determine whether the preschools imparted instruction, though summary judgment practice would later demonstrate that they did. Neither the Department nor the majority dispute that the preschools impart instruction in "listening, math, art, construction, science, writing, dramatic play, and reading." Indeed, the majority concedes that the preschools "bear some hallmarks of a school." Section V, *supra*.

**¶61** Despite the preschools being private schools that imparted instruction, and despite the Department's own definition of "preschool" as

"the instruction preceding kindergarten provided to individuals three to five years old through a . . . private school," the Department found all three applicants eligible to receive a license. The Department reasoned that because the preschools were childcare facilities, they were not also schools. The Department employed random selection and awarded the DRC to "Successful Applicant," whose proposed location was within 500 feet of both preschools.

### E. 3SL Sues, and Summary Judgment Practice Shows the Preschools Were Nonpublic Institutions Where Instruction Was Imparted When the Department Awarded the DRC.

**¶62** On December 28, 2016, 3SL brought this action by filing a special action complaint in superior court, alleging that it was wrongfully deprived of a chance to participate in the lottery to obtain the DRC at issue, given the preschools located near the Successful Applicant. On May 26, 2020, 3SL moved for summary judgment on its claim for declaratory judgment. On August 13, 2020, the superior court entered summary judgment for 3SL, finding that the Department's failure to exclude the successful applicant from the lottery was arbitrary and capricious because its proposed location was less than 500 feet from the two preschools.

**¶63** The summary judgment record demonstrated that the preschools imparted instruction. Ahwatukee Preschool's primary goals as outlined in the Parent Handbook are "[t]o provide quality education at a reasonable cost . . . to reinforce . . . learn[ing] through play, experience, and discovery . . . [and] [t]o introduce parents to the world of early childhood education." The preschool has nine teachers, a director, administrative staff, and a nurse on campus. Teachers are required to have a bachelor's degree with a preference in "early childhood education" or have a certificate in teaching. Ahwatukee Preschool's curriculum is STEM-oriented and focuses on science, technology, engineering, and math, as well as reading and writing. The curriculum also focuses on fine motor skills, large motor skills, cognitive, social, and emotional development. Report cards on each student's progress are sent to parents. Ahwatukee Preschool also operates on a schedule that is synchronized with the local school district and offers no summer programs.

**¶64** Grace Garden describes itself as "[a]n Early Childhood Educational facility. . . that balances learning through play and structure" on its website. Grace Garden participates in Arizona's First Things First Program, which bases its curriculum on the Arizona Early Learning Development Guidelines and Arizona's Infant and Toddler Development Guidelines. Grace Garden creates weekly lesson plans that include reading

and writing, art, physical activity, and science. Further, Grace Garden provides parents with report cards that monitor a child's educational and physical development. Grace Garden also holds parent-teacher conferences.

¶65 These facts were not disputed in the superior court and are not (and cannot be) disputed on appeal. The Department's argument on this subject remains that it is undisputed that the preschools are also licensed as child-care facilities, making it impossible for them to be schools as a matter of law. As explained below, that argument fails under the Act.

## DISCUSSION

## I. Preschools Are Schools Under the Act's Plain Language.

¶66 We analyze the Act's plain language to construe the Act's two provisions concerning schools. *See Ariz. Advoc. Network Found. v. State*, 250 Ariz. 109, 114 ¶ 19 (App. 2020). The majority is right that our primary objective in interpreting a voter-enacted law is to effectuate the voters' intent. *Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 323-24 ¶ 11 (2014). As we noted when interpreting the Act, we give "terms their ordinary and commonly accepted meaning, unless the [voters] have provided a specific definition." *JH2K I*, 246 Ariz. at 310 ¶ 9. If there is more than one possible reasonable interpretation of a statute, we look to "secondary interpretation methods, including the statute's subject matter, historical background, effects and consequences, as well as its spirit and purpose" to interpret it. *In re Drummond*, ___ Ariz. ___, 543 P.3d 1022, 1025 ¶ 5 (2024). Helpful here, Arizona courts often look to dictionaries to determine ordinary and commonly accepted meanings of terms undefined in statutes. *See Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, 515 ¶ 20 (2021); *State v. Clow*, 242 Ariz. 68, 71 ¶ 13 (App. 2017).

### A. The Plain Language of the Act Makes Clear That a Preschool in Section 2802(B) Is Also a School in Section 2804(B), So Marijuana Cannot Be Grown or Dispensed Near Preschools, Just Like the Other Schools in Section 2802(B).

¶67 The Act contains two provisions that operate to separate children from the growth, dispensing, and use of medical marijuana, and thus to protect sellers and users of medical marijuana: Sections 2802(B) and 2804(B). Our law requires us to read these provisions together and in harmony. *Albert L. v. Dep't of Child Safety*, 253 Ariz. 146, 149 ¶ 13 (App. 2022) (stating courts "seek to harmonize and attain consistency among related statutory provisions in the context of the overall statutory scheme")

(citation omitted); *see Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017) ("Words in statutes should be read in context in determining their meaning."). When we do, their meaning is clear.

¶68 The first provision, Section 2802, states that the Act did not legalize "[p]ossessing or engaging in the medical use of marijuana . . . [o]n the grounds of any preschool or primary or secondary school." A.R.S. § 2802(B)(2). Indeed, Section 2802 invited the legislature to impose criminal penalties for that conduct, which it soon did. *See* A.R.S. § 15-108(B) (prohibiting "possess[ion] or use [of] marijuana on the campus of any high school, junior high school, middle school, common school, or preschool"). Meanwhile, the second provision, Section 2804, bars the state from siting a medical marijuana dispensary "within five hundred feet of a public or private school" predating the Act. A.R.S. § 36-2804(B)(1)(b)(ii). Taken together, the plain language of Sections 2802 and 2804 show preschools are schools, for many reasons.

¶69 *First*, both separate schoolchildren from marijuana sale and use, in service of the Act's goals of "protect[ing] patients . . . from arrest and prosecution . . . if such patients engage in the medical use of marijuana." Prop. 203, § 2.G. It would make no sense for the same drafting hand to separate preschoolers, grade schoolers, and high schoolers from marijuana in Section 2802(B) – only to allow the placement of dispensaries next to preschoolers in Section 2804(B) while separating them only from older schoolchildren. *See State ex rel. Brnovich v. City of Phoenix*, 249 Ariz. 239, 244 ¶ 21 (2020) ("If the provision has only one reasonable interpretation, we apply it.") (citation omitted).

¶70 *Second*, the siting prohibition in Section 2804(B) is categorical, keeping dispensaries away from all schools – e.g., "public or private school[s]." A.R.S. § 36-2804(B). Even if one reads "public or private school" to beg the question of whether preschool is a school, that sends you back to Section 2802(B)(2), which shows the Act treating preschoolers as on par with grade schoolers and high schoolers in enforcing separation between them and marijuana dispensaries.

¶71 *Third*, Section 2802(B)(2) treats schoolchildren as one conceptual group: those enrolled in "preschool or primary or secondary school." A.R.S. § 36-2802(B). This was not a dry definitional exercise. It kept marijuana away from kids, and vice versa. That's why the adjacent Section 2802(B)(1) listed "[o]n a school bus" as another no-marijuana zone. Section 2804 surely addresses the same universe of children separated from medical marijuana by keeping dispensaries away from all public and private schools. *Albert L.*, 253 Ariz. at 149 ¶ 13 (requiring us to "seek to

harmonize and attain consistency among related statutory provisions in the context of the overall statutory scheme").

### B. Our Decision in *JH2K I* Reinforces That the Plain Meaning of "Preschool" in Section 2802(B) Is a Type of "School."

¶72 *JH2K I* should guide our plain meaning analysis and lead us to affirm. *See JH2K I*, 246 Ariz. at 311-12 ¶ 17. There, we analyzed whether the Department abused its discretion by including schoolgrounds within the definition of "school." *Id.* at 310-12 ¶¶ 10-17. We analyzed Section 2802's authorization of penalties for the possession or use of medical marijuana "[o]n the grounds of any preschool or primary or secondary school." *Id.* at 311 ¶ 17 (cleaned up). We explained that Section 2802(B)'s language had an obvious import: "that provision shows that the voters' intent was plain: to prevent schoolchildren from exposure to marijuana." *Id.* We thus made clear that "preschool or primary or secondary school[s]" in Section 2802(B) all contain "schoolchildren." *Id.* *JH2K I* treats "preschool" as of a piece with "primary or secondary school."

¶73 Demonstrating the lack of ambiguity in the Act, we did not use secondary interpretive tools to parse Section 2802(B) in *JH2K I*. This shows we found Section 2802(B) unambiguous in treating "preschool" as a type of "school" containing "schoolchildren." *See Fuentes v. Fuentes*, 209 Ariz. 51, 55 ¶ 12 (App. 2004) ("[W]hen the statutory language is clear and unambiguous, a court need not and should not resort to secondary rules of statutory construction."); *Chaparral Dev. v. RMED Int'l, Inc.*, 170 Ariz. 309, 311 (App. 1991) ("Our first duty in interpreting a statute is to determine and give effect to the legislature's intent, and the first place to look is the wording of the statute. If the language is plain and unambiguous, then no construction is necessary and our duty is simply to apply that plain and unambiguous language."). So it should be here – we should resolve the question with reference to the plain meanings of Section 2802 and 2804.

¶74 The majority's turn away from plain meaning creates a deeper inconsistency between today's decision and *JH2K I*. We already explained in *JH2K I* that Section 2802's "preschool or primary or secondary school[s]" are those protected by Section 2804's spatial buffer. 246 Ariz. at 312 ¶ 17. While stressing that schools extend to their property's edge (and not just the school building on that property), we gave effect to Section 2802's plain intent "to prevent schoolchildren from exposure to marijuana," stating it would be "contrary to that intent" if "a dispensary could theoretically operate directly adjacent to school grounds" – without the buffer Section 2804 requires between schools and dispensaries. *Id.* Yet that is precisely the result the Department achieves today – siting a dispensary literally

adjacent to a type of school listed in Section 2802, which we warned in *JH2K I* was "contrary to" the voters' intent in the Act. *Id.*

¶75　　　The majority's answer to this is wholly unpersuasive. It asserts that the dissent misconceives the voters' intent as separating schoolchildren from marijuana, when the Act's real intent is to keep medical marijuana users from prosecution. *See* Paragraph 42, *supra* ("[W]e do not, as the dissent does, rely on an inferred intent beyond the Act's express purpose.") This is a false inconsistency. Separating schoolchildren from medical marijuana growing, sale, and use *is one means the voters chose to protect marijuana growers, sellers, and users from prosecution.* Compare Prop. 203, § 2.G. (stating goals of avoiding prosecution for dispensers and users of medical marijuana) *with* A.R.S. § 36-2802(B)(2) *and* A.R.S. § 36-2804(B) (separating medical marijuana use and sale from schoolchildren). The intent the majority identifies is the same intent effectuated by the dissent's closer reading of the same statute. This is necessarily consistent with the concurrence in *Arizona Department of Revenue v. Tunkey* the majority cites, which emphasized four justices' view that "the words of a statute . . . are not 'evidence' of anything. They are the law." 254 Ariz. 432, 437 ¶ 26 (2023) (Bolick, J., concurring, joined by Beene, Montgomery, and King, JJ.) (cleaned up). The Act's language and design, which separate schoolchildren from marijuana, demonstrates the voters' intent to do what that very language says. We should follow *JH2K I*, read these sections together to give effect to the voters' intent, and affirm.

### C.　　Dictionaries Refute the Department's and the Majority's Approach, Defining "Preschool" as a "School."

¶76　　　The majority asserts in Paragraph 16 that preschools are not schools, without citing any case law that says so. While *JH2K I* stands against the majority's unsupported approach, so do dictionaries, including the dictionary the Department cited to this court.

¶77　　　The Merriam-Webster Dictionary defines the noun "preschool" as "a school for children usually younger than those attending elementary school or kindergarten." *Preschool*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/preschool (last visited September 24, 2024).[3] While we do not have an official or preferred

---

[3] The Department cites one of Merriam-Webster's two definitions of "preschool" in its argument that "preschool" is not a "school," even though Merriam-Webster supports 3SL's position. The Department sows confusion by suggesting this dictionary does not provide a clear answer to

dictionary, Arizona courts often cite this version of the Merriam-Webster Dictionary when analyzing the plain meaning of statutes. *See, e.g.*, *State ex rel. Brnovich*, 249 Ariz. at 244 ¶¶ 21, 22; *City of Phoenix v. Orbitz Worldwide Inc.*, 247 Ariz. 234, 239 ¶¶ 14, 18 (2019). The Oxford Advanced American Dictionary agrees with Merriam-Webster, defining "preschool" as "a school for children between the ages of about two and five." *Preschool*, OXFORD LEARNER'S DICTIONARIES, https://www.oxfordlearnersdictionaries.com/us/definition/english/preschool?q=preschool (last visited September 24, 2024).

¶78        Were there one, the majority could seek to cite a dictionary definition allowing that preschools are either schools or nurseries for children two or three years through five years old. *See Preschool*, COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/preschool (last visited September 24, 2024) (defining "preschool" as "a school or nursery for preschool children"). But that would refute the majority's analysis just as squarely, because the majority, like the Department, does not dispute that *these particular* preschools provide instruction to children of preschool age. To be correct, the majority needs the answer to be that preschools *can never be* "schools," and that is neither colloquially accurate nor consistent with the record of this case. Plain meaning dictates the opposite reading of A.R.S. § 36-2802(B) – "preschool" in the Act is a "school."

¶79        The majority's response that *In re Drummond,* ___ Ariz. ___, 543 P.3d 1022 (2024) excuses it from considering or refuting dictionary definitions reinforcing the statutes' plain meaning of "preschool" is wrong for several reasons.

¶80        *First*, the Arizona Supreme Court in *In re Drummond* approved the use of dictionaries in a case like this one: "[a]bsent a statutory

---

the question before us, calling Merriam-Webster's definition of "preschool" that reads "of, relating to, or constituting the period in a child's life that ordinarily precedes attendance at elementary school" one of "the two possible definitions of preschool."

But that discussion of Merriam-Webster is misleading, because the definition of preschool the Department cites is "preschool" *as an adjective*. The use of "preschool" in Section 2802, which we are charged with interpreting, is as a noun. The Merriam-Webster definition of preschool *as a noun* is "a school for children usually younger than those attending elementary school or kindergarten." If we follow Merriam-Webster, as the Department asks us to, preschool is a school, and 3SL wins.

definition, courts generally give words their ordinary meaning and may look to dictionary definitions." *Id.* at 1026 ¶ 9. That language controls here: the voters didn't define "preschool" in the statute we are parsing, and we may therefore look to dictionary definitions.

**¶81** *Second*, the majority asserts without explanation that the several aligned dictionary definitions that support 3SL are somehow "inconclusive" and must be disregarded like the conflicting and inconsistent definitions of "mobile home" in *In re Drummond*. Paragraphs 24-25, *supra*. But that's not a fair reading of *In re Drummond*. There, our supreme court considered whether dictionary definitions were sufficiently aligned to create plain meaning and found them too inconsistent as a group to do so. *Id.* ("Here, dictionary definitions of "mobile home" are too varied to categorically establish any plain meaning.") (citing, like this dissent, the Merriam-Webster online dictionary). It is likewise not a fair reading of the dictionary definitions at issue here to label them "inconclusive," where two of them require considering preschools to be schools, and the third allows that they may be schools.

**¶82** *Third,* to the extent the majority's argument is that the meaning of "preschool" is so plain on the face of A.R.S. § 36-2802(B)(2) and A.R.S. § 36-2804(B) that we must not resort to secondary tools of interpretation, the statutes' lack of perfect clarity (at least in support of the majority's position) stand against that proposition, as this Dissent explains in Paragraphs 67-71 (Section I.A.).

**¶83** Finally, while finding the dictionaries in that case inconclusive, *In re Drummond* pointed us toward the secondary interpretive tool that demonstrates why 3SL should prevail – the *noscitur a sociis* canon. *Id.* at 1028-29 ¶¶ 23-27. As explained below in more detail, that canon shows that "preschool," which the people used in the Act in a sequence with "primary [school]" and "secondary school," was to the drafters a "school." *See* Paragraphs 88-89, *infra*.

### D. The Department's Own Regulation Corroborates the Dictionaries Defining "Preschool" as a "School."

**¶84** The majority is right that we do not defer to the Department's longstanding interpretation of "preschool" as a "school" and "school" as including "preschool." *See* A.R.S. § 12-910(F).

**¶85** Nonetheless, the Department's longstanding usage of "preschool" as "school," including in 2016, when the relevant events in this case all occurred, further corroborates what definitions in Merriam-

Webster and the Oxford Advanced American Dictionary show. The plain meaning of "preschool" in A.R.S. § 36-2802(B) is a type of "school." Because the Department's regulatory definition of preschool as a school is consistent with the statute, colloquial meaning, and dictionary definitions, I agree with the Department that a preschool that is a private school providing instruction to students aged three to five is a "school" under the Act. While we do not defer to the Department's prior interpretation of law, we are likewise not bound to reflexively disagree with a regulation where it properly harmonizes with statutory law, as here.

## II.    Other Aids to Interpretation Reinforce That "Preschool" Is a Type of "School" Within the Act.

### A.    The Department's Interpretation of Sections 2802 and 2804 Is at Odds With One Purpose of the Act, and Fails to Effect the Act's Objects, as A.R.S. § 1-211(B) Requires.

¶86        We are charged with construing the Act "liberally . . . to effect [its] objects and to promote justice." A.R.S. 1-211(B). For that reason too, we should not indulge the Department's desire to read Sections 2802 and 2804 unrelatedly and narrowly, thus achieving the dubious and intent-thwarting end of juxtaposing young schoolchildren with medical marijuana dispensaries. Reading the Act more expansively, with an eye toward its purposes, as Section 1-211(B) commands, requires this outcome.

### B.    While We Should Not Reach Secondary Rules of Statutory Construction, If We Do, They Likewise Require Affirmance.

¶87        We should not reach secondary rules of construction to decide this case, because "preschool" in the Act is unambiguously a type of school whose children are protected by the buffer in Section 2804. *See Fuentes*, 209 Ariz. at 55 ¶ 12 ("[W]hen the statutory language is clear and unambiguous, a court need not and should not resort to secondary rules of statutory construction."). Yet even if the term "preschool" were ambiguous, allowing consideration of these secondary rules of construction, these rules too show that preschools are schools under the Act, requiring affirmance.

#### 1.    The *Noscitur a Sociis* Canon Shows That "Preschool" in Section 2802 Means "School."

¶88        The *noscitur a sociis* canon shows that preschools are schools in § 2802(B) because they are listed in a series of three types of schools – preschool, primary school, and secondary school. The canon of *noscitur a sociis* reminds us that "words grouped in a list should be given related

26

meanings." *Normandin v. Encanto Adventures, L.L.C.*, 246 Ariz. 458, 460 ¶ 11 (2019) (citation and quotations omitted).

**¶89** *Normandin* is instructive. There, our Supreme Court used *noscitur a sociis* and construed "manager," one type of person listed in a series in A.R.S. § 33-1551, as having the "authority to control the public's access to land for recreational use," just like the other types of persons listed alongside "manager[s]" in § 1551 – "easement holder[s], lessee[s], and tenant[s]." *See id.* at 461 ¶ 12. Section 2802(B) contains just such a parallel construction, barring the possession or use of medical marijuana in "preschool or primary or secondary school." As in *Normandin*, we should construe those three listed terms – "preschool," "primary [school]," and "secondary school" - as having a common relevant characteristic – here, being types of school at which medical marijuana possession or use is prohibited. *See also City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211 ¶ 14 (2019) (employing *noscitur a sociis* to construe "otherwise dispose of" limitedly, and thus consistent with "sell," "lease," "assign," and "mortgage," other actions listed in A.R.S. § 40-285(A)). In *JH2K I*, 246 Ariz. at 311-12 ¶ 17, we implicitly employed *noscitur a sociis* to construe "preschool" in just this way, because we treated as "schoolchildren" all of the children who are found "on the grounds of any preschool or primary or secondary school." So it should be here.

> **2.** **The Inapt *Expressio Unius Est Exclusio Alterius* Canon Cannot Show Section 2804 Allows Siting Dispensaries Next to Preschools Because "Private School, Public School, and Preschool" Is Not a Parallel Construction.**

**¶90** The majority's plain meaning analysis is that Section 2804 cannot include preschools, because Section 2804 would have read "public schools, private schools, and preschools" were they meant to be included. *See* Paragraph 22, *supra*. While the majority does not call that *expressio unius est exclusio alterius*, the majority is using that canon by arguing the legislature excluded "preschool" from Section 2804(B) when it included "public school" and "private school" but not "preschool" there. *See State v. Gonzales*, 206 Ariz. 469, 472 ¶ 11 (App. 2003) (defining canon). This argument fails.

**¶91** *First*, all age-divisions of school can fall within either the set of public schools or private schools, as the below figure illustrates. There

are private preschools, primary schools and secondary schools. And there are public preschools[4], primary schools, and secondary schools.

**Funding/Control**

|  |  | Public | Private |
|---|---|---|---|
| **Age** | *Secondary* | Public Secondary | Private Secondary |
|  | *Primary* | Public Primary | Private Primary |
|  | *Preschool* | Public Preschool | Private Preschool |

**¶92**        As such, the absence of "preschool" from Section 2804 cannot mean preschools are excluded from the set of "private schools" or "public schools." As we know, they are not. Indeed, the majority's logic would force one to conclude that the absence of "grade schools" or "secondary schools" from Section 2804 would mean they are likewise neither public or private schools. That too is untrue. This canon does not aid the majority, which cannot force these linguistic square pegs into this inapt canonical hole.

**¶93**        *Second,* the majority's strained interpretation ignores our Supreme Court's teaching in *State ex rel. Brnovich*, 249 Ariz. at 244 ¶ 21 that "[w]e will not apply 'fine semantic or grammatical distinctions' or 'parse sentences,' . . . as doing so 'may lead us to results quite different from the objectives which the framers intended to accomplish.'" Put another way, while it is true that we do not read a statute to render any of its terms superfluous, that canon has no application here, where all three institutions Section 2802(B) lists are forms of "school" – as this Court has already correctly explained. *See JH2K I*, 246 Ariz. at 311-12 ¶ 17. Treating preschool as a form of school renders none of the three uses of "school" in Section 2802(B) superfluous.

### 3.        The Purpose of Clarity in Criminal Law Is Better Served by Harmonizing Sections 2802 and 2804.

**¶94**        Reading Sections 2802(B) and 2804(B)(1)(b)(ii) together to refer to all preschools, primary, or secondary schools keeps the line of separation between marijuana growers, sellers, and users (on one hand) and Arizona's schoolchildren (on the other hand) bright and clear. *See also*

---

[4] *See* A.R.S. § 15-101(22) and Paragraph 34, *supra*.

*Johnson v. United States*, 576 U.S. 591, 595–96 (2015) (explaining that part of due process in the criminal law is providing a clear statement of criminal prohibitions and clear notice of potential violations). Under the better, harmonized reading of the Act, one cannot grow or dispense medical marijuana within 500 feet of a preschool, primary school, or secondary school, nor can one possess medical marijuana at a preschool, primary school, or secondary school.

¶95 Yet under the reading of these two provisions, that elegant simplicity vanishes. True, in the Department's construction, one can neither grow or dispense marijuana within 500 feet of a primary or secondary school, and cannot possess medical marijuana on their grounds. But as the Department would have it, one can grow and/or dispense medical marijuana right up to a chain link fence that would divide a marijuana planting bed from a preschool playground, but cannot possess medical marijuana at a preschool. This destroys the Act's symmetric segregation of dispensaries from schools that emerges under the better reading of Sections 2802(B) and 2804(B)(1)(b)(ii). The opposite interpretation is simpler and makes a lot more sense.

III. **The Department's Interpretation of the Act, Which Consists Principally of Shoehorning All Questions of Voter Intent into Title 15, Fails to Respect the Voters' Intent in the Act.**

¶96 The Department argues that all definitions of "school" in the Act must be determined by Title 15, and since preschools generally aren't Title 15 schools, they could never be schools in the Act. The Act's text, however, shows why the Department cannot shoehorn it into Title 15.

¶97 The Act - as the voters approved it - plainly intended that its provisions ***not*** cross-reference and adopt definitions in Title 15. The Act the voters approved is a parade of cross-references to a host of other provisions of Arizona law – except not Title 15. There are almost too many such cross-references to list. The Act defines "physician" with four different cross-references to Title 32, while leaving "school" undefined. A.R.S. § 36-2801(14). The Act invokes Title 12 to establish a mechanism for review of the denial of a petition to add debilitating medical conditions to those listed in the Act. *See* A.R.S. § 36-2801.01. It refers to the registration of pharmacies as a yardstick for how many dispensaries the department may license. *See* A.R.S. § 36-2804(C). The Act partakes of the law of corporations when it cross-references Title 10 to explain that dispensaries need not incorporate. A.R.S. § 36-2806. Title 9 shows up as the Act delineates the powers of cities and towns to regulate dispensaries through zoning. A.R.S. § 36-2806.01. Title 39 makes an appearance as the Act makes certain information exempt

from public disclosure.  A.R.S. § 36-2810.  The Act also cross-references Title 13 to explain the limitations on civil forfeiture with respect to dispensaries.  A.R.S. § 36-2811(F).  But search as one might, there is no cross-reference to Title 15 in the Act the voters passed, despite the drafters' repeated references to schools and evident familiarity with the structure and content of the Arizona Revised Statutes.

¶98            By referencing *six different titles* of the Arizona Revised Statutes to give substance to the provisions of the Act – *but not Title 15* – the text of the Act evinces an unambiguous intent not to incorporate its concepts wholesale in construing terms.  *See Pima County v. Heinfeld*, 134 Ariz. 133, 134 (1982) (explaining "well established rule of statutory construction provides  that the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed[]").  In other words, *expressio unius est exclusio alterius* defeats the Department's quest to subordinate the Act to Title 15 – the voters left Title 15 out of the Act as they enacted it.  *See id.*

## IV.    A Parade of Horribles Will Not Ensue if the Act Is Construed as the Voters Intended, and Dispensaries Are Separated From Preschools, as From Other Schools.

¶99            Finally, the majority suggests that a parade of horribles will ensue if we give effect to the plain meaning of "preschool" in Section 2802, because the Department will be put to too much trouble to parse whether a self-denominated "preschool" is really a "school."  That argument fails for many reasons.

¶100           *First*, the argument was shown to be untrue in this case.  Here, the Department was on notice of a self-denominated "preschool" next to the site of a proposed medical marijuana dispensary.  It could on that basis have found the site improper for a dispensary, just as it would were it adjacent to a primary or secondary school.  The Department faced no administrative burden, save that imposed by its choice to conclude that all preschools are not schools, and thus to site a medical marijuana dispensary literally adjacent to a preschool.  Given that applicants for a DRC must already state in their application whether there is a school within 500 feet of their proposed dispensary site, there is no additional burden if the Department must also ask applicants to state whether there is a school, including a preschool, within 500 feet of their proposed dispensary site.  The majority never explains why this entails any marginal effort for the Department, and it seemingly does not.

**¶101**      *Second,* even if construing the Act correctly here might lead to administrative burden, and all indications are it will not, that is not our cue to rewrite the statute. We are here to give effect to the people's enactment, not to preempt that analysis by deciding it would be too hard to do what the voters enacted.

## CONCLUSION

**¶102**      For all of these reasons, I respectfully dissent and would affirm the judgment of the superior court, while remanding to determine the appropriate remedy for 3SL's exclusion from the lottery.

